Curia, per Withers, J.
The point raised by the first ground of appeal, we hold to have been definitely settled, that is to say, Noah Harmon was a competent witness in this cáse.
The question presented by the second ground for a new trial, which complains that the defendant was arraigned and tried for a felony, under statute, whereas the oifence was no more than misdemeanor, is not properly a question on the case; for it was no matter of objection on the circuit. The defendant has, certainly, taken no prejudice thereby; quite the contrary.
The material legal questions arising in the case we take to be:
1. Was the alteration of the receipt imputed to the defendant, the oifence of forgery under our statute law?
2. Was the offence of such forgery, or of uttering and publishing the instrument knowing it to be forged, legally set forth in the indictment?
The receipt was in these words:
“Received, January 29th, 1848, of Washington Floyd, twenty-one dollars and 50 cents, for work done in 1847, in full up to date. (Signed.) Noah Harmon.”
The Jury have found that, after the receipt was executed, the defendant deceitfully and fraudulently struck out the word “ part,” and wrote, in lieu of it, the words “ full up to date.”
• The first question is, was this forgery? — or does it import that the defendant did “falsely make, forge, and counterfeit” an acquittance or receipt for money, with intent to defraud Noah Harmon? The equivalent question is, was the alteration, above specified, falsely making and forging the receipt set forth ?
Our statute of 1736, embracing the description of papers in question, is borrowed from 2 Geo. 2, ch. 25, and it does not use the word “alter” in relation to acquittances or *64 receipts. That word is introduced in imitation of another British statute, in relation to other descriptions of writings. It is argued, hence, that as to receipts, the forging, or counterfeiting, or falsely making thereof, must be held to mean the entire instrument of writing; that, at any rate,- a forging by alteration must be alleged to be by alteration; and that proof of such forgery does not sustain a general charge of forging the whole paper.
This conclusion we must reject; It is consistent neither with sound reasoning on general principles, nor with adjudged cases.
The distinguishing characteristic of-forgery is, the crafty fraud and deceit whereby it is designed to injure some one; an offence which, when perpetrated through spurious writings, was noticed by the common law to a very considerable extent, as may be seen -in the well considered case of The King v. Ward. Many statutes have been passed, not so much, though partly to be sure, to enlarge the range of t.he common law as to the description of instruments that should be protected against the cunning perpetrators of this offence,' as to increase the weight of punishment that should follow conviction. Accordingly, the stat. of 5 Eliz. ch. 14, punished with death the forging of certain instruments, which it was an offence to forge, at common law.- In proportion as the advances of trade and commerce have invested certain instruments in writing, formerly known, or moré recently called into existence, with a consequence specially affecting individual and general interests, statutory provisions have drawn them within special protection; and such has been the legislative policy of England and South Carolina. Now, in regard to the subject matter of this indictment, the mischief is just as fully and conveniently perpetrated by one of various alterations, as it could be by fabricating the whole instrument. A note or a receipt is either genuine, or it is not. If it be falsely and fraudulently altered in a particular making, it speaks a different language, calculated to- produce a different result in its operation, to the prejudice of some one who is designed to be defrauded or injured thereby. The instrument thus abused is not that of the party whom it purports to bind; it was not made by him — but, to every reasonable intent or purpose, it is made by the person so altering it — ■, if fraudulently so made, it is forged by him: and, in the reason of the thing, there can be no difference whether the word “ forge” be spoken by a statute or the common law. This is true even in the technical sense, for, if a party be sued on such an instrument, a plea of the general issue, implying that he never made it, that it is not his note or bond, for example, would be sustained by proof of an alteration in an important particular.
*65 The authorities reinforce the general reasoning, and we believe they are, in turn, well sustained by it. Dawson's case, (2 East. P. C. 978, which is derived by Foster from Lord King’s MS.) was decided as early as 3 Geo. 1. He was indicted under the 8 & 9 William 3, ch. 20, sec. 26, intended to protect the Bank of England, and punishing with death any person convicted of “forging or counterfeiting the common seal of the corporation, &c., or any bank note of any sort whatsoever signed by the said Governor,” &c. The indictment laid a forgery of the whole bank note: the proof was that he altered the figure 2 to 5, so as to make £520 instead of £220. The ten judges held that this was forging and counterfeiting, (fabricavit et contrafecit was the language of the record, vide 1 Strange 19.) forgery being the alteration of a deed or writing, in a material part, to the prejudice of another, as well as where the whole deed or writing is forged: that was not law in this respect; for non assump-sit might be pleaded to such a note.
This was followed and reaffirmed by Teague's case, decided in 1802, and under the Statute 7 Geo. 2, ch. 22, which used the word “ alter,” as well as forge. And, although Teague was convicted of uttering and publishing, yet it was for uttering and publishing a “ forged" bill, which, by the proof, was only “altered” from £10 to £50; and, upon the point raised there, as it is here, now under consideration, all the Judges held that the indictment was good in stating that Teague forged and uttered, knowing it to be forged. It is palpable that nothing can he drawn from the conviction, under the second count, except that altering is forging, for, if not, Teague did not utter a forged bank bill. These two cases show that whether the language be forge, or forge and alter, the result is the same. It may be that when the party is charged with “altering,” where that word is not in the statute, (as it is not in ours respecting the paper now in question,) it may be necessary to allege, also, enough to show that the alteration is, in some particular, calculated to work deception, fraud and injury, and, consequently, in some material particular.
The principle of the cases of Dawson and Teague has been reaffirmed, at a recent period, in England. The indictment charged that the prisoner did feloniously forge a certain receipt for money, which was copied. It was a receipt of the high constable to the churchwardens and overseers of a parish for their share of county poor rates. In its genuine form, it specified the sum of £3 5s. 9d. The defendant had altered 5s. to 15s. It was held, (upon objection that the receipt was altered and not forged,) that the defendant had forged the paper, as charged, although the language of the statute was, “ If any person shall forge or alter," &c. It is *66 well to remark here that the offence was charged as a felony, although the punishment was to be transportatian for life, or for a term not less than seven years, or imprisonment for a term not exceeding four nor less than two years.
It is not doubtful that the best interpretation of a statute is to construe it as near to the rule and reason of the common law as may be, and by the course which that observes in other cases. This has been familiar judicial language at all times. By the common law, as interpreted by Blackstone, forgery is the “ fraudulent making or alteration of a writing, to the prejudice of another’s right.” ■ We have no reason to distrust the definition, since many text writers, of good repute, have adopted it; and it has been sanctioned by our own Court in the case of The State v. Waters. Now, when our statute uses the word “forge,” why shall we give it an interpretation more restricted than that adopted and taught by the common law ? Why shall we hesitate to follow the light of the cases already cited, often approved, and fortified by considering that it is our duty to advance the remedy where the obvious mischief to be cured invites its application?
We cannot favor the notion that the Act of 1845 intended to abrogate anything in our statute book, previously of force, on the subject of forgery, except only the measure of punishment. It was necessary to make a recitation of the classes of offences, under the general head of forgery, in several acts, to which, severally, the mitigated and substituted penalty was to apply. It spoke of offences under the law then existing, and of convictions afterwards to be had under the same law. The definition of the offences, respectively, and the declaration that they were such, have been left precisely as they were before.
2. What has been already said prepares us to give an answer to the second question to be discussed, touching the form of the indictment. It seemed, indeed, hardly to be contested that if altering was forging, in the sense of the statute, the indictment was sufficient. The offence, in the present case, is charged in the words of the statute. The form is such as is recommended by Arch bold, in his Crim. Pleading; it complies with the instruction of Chitty, as follows: “ In all indictments for the alteration of a written instrument, where the Act does not expressly provide for altering, the offence should be charged as a forgery in the words which the legislature have employed. And even though the Act has the word alter as well as forge, the offence may be laid as if the whole instrument had been counterfeited, for any alteration of a material part is a forgery of the whole; but it is more usual, at least in one Court, to state the particular alteration charged as criminal.’’ East, in his Pleas of the Crown, observes: “But the indictment need not state the *67 manner in which the party is to be defrauded, for that is matter of evidence.’’ He cites cases to support the doctrine., This rule must follow as a consequence. To alter the paper is to forge it entire: that is declared to be the offence, if done to deceive. When the forgery, therefore, is announced with the allegation of the intent, the offence is completely described. It may become a very material question, in evidence, whether the intent was to deceive any one, and the fitness of the crafty means employed to work that result, must be shown in the proof. Hence it becomes important for the State to show the materiality of the alteration towards the end of fraud and imposition ; but the modus operandi in that respect is no necessary part of the indictment. How that question might be as at common law, we have not stopped to inquire ; for we hold this party to have been charged with a statutory offence.
The conclusion is, that the indictment is in law sufficient.
Yet the Court has determined to award a rehearing to the defendant. Nor is any inference to be deduced from this of the opinion of this Court upon the facts. We are not forgetful of the degrading punishment to which the defendant is now liable, and our only aim is, to afford an opportunity to recommit his case to a jury, in deference to the grave doubts entertained by the Judge who presided at the trial.
A new trial is therefore ordered, without prejudice.
Evans, Wardlaw, Frost, JJ., concurred.