2238

The STATE, Respondent v. John WESCOTT, Appellant.

(450 S.E. (2d) 598)

Court of Appeals

*Deputy Chief Atty. Joseph L. Savitz, III, S.C. Office of Appellate Defense*, Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka*, and *Deputy Atty. Gen. Salley W. Elliott*, Columbia, and *Sol. Donald V. Myers*, Lexington, *for respondent.*

Heard Sept. 7 , 1994.

Decided Oct. 10, 1994.

SHAW, Judge:

In this criminal matter, appellant, John Wescott, appeals his convictions of forgery and conspiracy to commit forgery. We affirm.

The record reveals the following facts. On November 29, 1990, the South Carolina Highway Department issued an identification card to one Marilyn Lawhorn indicating an address of 2700 Greenwood Road, Rock Hill, South Carolina 29730. On January 7, 1991, the department issued a driver's license for the same person, Marilyn Lawhorn, at the same address. Around the first of January, 1991, a young black lady set up an account with a telephone answering service in the name of Marilyn Lawhorn, doing business as Harrison Interior Service and Company. She contracted with the answering service, to answer her phone calls and accept a package, on a

temporary basis of one month. On January 8, 1991, a woman opened up a business checking account at Victory Savings Bank in the name of Marilyn Lawhorn, doing business as Harrison Interior Service and Company. The woman presented a South Carolina driver's license and deposited $100.00, the minimum required to open a checking account. She gave a business address of 1218 Henderson Street, Columbia, South Carolina, the address of the telephone ans-wering service.

On January 14, 1991, a woman purchased a business license from the City of Columbia in the name of Marilyn Harrison Lawhorn, doing business as Harrison Interior Service and Company. She gave a residential address of 2700 Greenwood Road in Rock Hill, and a business location of 1218 Henderson Street in Columbia, She gave a telephone number which was the same as that of the telephone answering service.

The telephone answering company received one package on behalf of Ms. Lawhorn, from the John Harland check company, which someone picked up after notification. The only messages taken for this account were in regard to returned checks. There was never a business actually set up or conducted out of 1218 Henderson Street for Harrison Interior Service and Company.

On January 28, 1991, four checks came in to the bank on the Marilyn Lawhorn account which were returned for insufficient funds. The checks were made out individually to Eric Davis, Darryl Ross, Ladda Weikel and John Wescott. The Wescott check had been negotiated at the Kroger Sav-on. All four of the checks were made out for exactly $195 and indicated they were for payment of a commission, or were an advance. On January 31, 1991, four more checks drawn on this account came in to the bank, each bearing a similar notation and made out for exactly $195. These checks were sent back as "account closed."

On January 26,1991, appellant cashed a Lawhorn check at a Bi-Lo in Lexington. The check was made out to appellant in the amount of $195 and was signed by Marilyn Lawhorn, As with the other checks, it contained the notation of "advance." Appellant's fingerprints were found on the check.

On the evening of January 26, 1991, a young lady attempted to a cash Lawhorn check made out to Ladda Weikel for $195 at a Lexington K-Mart. The woman was accompanied by the

appellant, and both were questioned at the store by a police officer. During the questioning, appellant agreed to empty his pockets but attempted to conceal one item in his hand. This item was another Lawhorn check made out to appellant for $195. Later, at the police station, officers were allowed to look at the contents of Ms. Weikel's purse, and found three checks made out to Ms. Weikel on the Lawhorn account, each with the "advance" notation in the corner. In a hotel room registered in appellant's name, police found a map of Columbia, containing a handwritten list of shopping malls and addresses in the Columbia area. The police further discovered there was no such address as 2700 Greenwood Drive in Rock Hill. A detective with the Lexington Police testified he diligently attempted to find Marilyn Lawhorn, but could not determine that she exists.

Appellant was indicted for forgery under S.C. Code Ann. § 16-13-10 (1985) and conspiracy to commit forgery. At the close of the State's case, appellant moved for a directed verdict, arguing there was no evidence of forgery or conspiracy to commit forgery. The trial judge denied the motion and the jury returned a verdict of guilty on both counts. This appeal followed.

Appellant contends there is no evidence of any forgery under the statute, and therefore, he could not be found guilty of forgery or conspiracy to commit forgery. He asserts, because the check was a legitimate check drawn on a legitimate account, signed by the individual authorized to issue checks on that account, there could be no forgery. He argues, at most, he was guilty of passing a fraudulent check under S.C. Code Ann. § 34-11-60 (Supp. 1993) and conspiracy to pass fraudulent checks. We disagree.

S.C. Code Ann. § 16-13-10 (1985) provides in pertinent part as follows:

> Whoever shall be convicted (a) of falsely making, forging or counterfeiting, causing or procuring to be falsely made, forged or counterfeited or wilfully acting or assisting in the false making, forging or counterfeiting of any writing or instrument of writing, (b) of uttering or publishing as true any false, forged or counterfeited writing or instrument of writing, . . . or (d) of willingly acting or assisting

in any of the premises, with an intention to defraud any person, shall be guilty of forgery and shall be sentenced to be imprisoned not less than one year nor more than seven years and also to pay such fine as may be judged expedient, at the discretion of the judge who may try the case; *provided,* that if the amount obtained or sought to be obtained upon the forged instrument be less than twenty dollars, the punishment shall be within the discretion of the judge.

S.C. Code Ann. § 34-11-60(a) (Supp. 1993) provides in pertinent part:

It is unlawful for a person, with intent to defraud, in his own name or in any other capacity, to draw, make utter, issue, or deliver to another a check, draft, or other written order on a bank or depository for the payment of money or its equivalent, . . . when at the time of drawing, making, uttering, issuing or delivering the check . . . the maker or drawer does not have an account in the bank or depository or does not have sufficient funds on deposit with the bank or depository to pay the same on presentation. . . .

The statute against forgeries is a mere enlargement of the common law offense. *State v. Singletary,* 187 S.E. 19, 196 S.E. 527 (1938). The purpose of the statute "is to protect society against fabrication, falsification, and the uttering, publishing, and passing of forged instruments. . . ." *Id.* The three important factors requisite to constitute forgery by uttering or publishing a forged instrument are: (1) it must be uttered or published as true or genuine (2) it must be known by the party uttering or publishing it that it is false, forged, or counterfeited and (3) there must be intent to prejudice, damage, or defraud another person. *Id.*

As a general rule, forgery cannot be committed by the genuine making of an instrument for the purpose of defrauding. However, it has been held that the making of a false instrument is as much a forgery as is the false making of an instrument 36 Am. Jur. (2d) *Forgery* § 6 (1968). Further, the crime of forgery may be committed by the signing of a fictitious or assumed name, provided the instrument is made

with intent to defraud. Whether the person whose name is signed to the instrument is real or fictitious is a question for the jury, but the state need not prove beyond a reasonable doubt that no such person exists. 36 Am. Jur. (2d) *Forgery* § 11 (1968).

Appellant contends, under the State's construction, there is no difference between writing a bad check and committing forgery. We disagree. This is not merely a case of a check written on an account with insufficient funds. There is an abundance of circunstantial evidence which shows the account was in the name of a fictitious person, doing business as a fictitious, albeit licensed, business.

The case of *United States v. Metcalf*, 388 F. (2d) 440 (4th Cir. 1968), is similar to the case at hand. There, defendant Metcalf opened a checking account in a South Carolina bank under a fictitious name, and drew checks against the account signing the fictitious name. The checks were returned unpaid because of insufficient funds.

The United States Court of Appeals followed the "broad rule" that one who signs a check or other paper with a fictitious name, that he represents to be his own, is guilty of forgery if he acts with fraudulent intent, and if the paper has sufficient appearance of validity upon its face to enable it to be used to the prejudice of another.

Metcalf sought to distinguish his case from those where checks were drawn on a nonexistent bank. He asserted, because he established an actual bank account upon which the checks were drawn, he could not be guilty of forgery, but only of drawing a check upon an account with insufficient funds.

The court found Metcalf's guilt was dependent upon his intent and purpose in establishing the fictitious bank account, noting fraudulent intent is an essential element of forgery. The court noted, absent a fraudulent intent, he could not be guilty of forgery, even though the bank account established under a fictitious name had insufficient funds. The court then held as follows:

> Metcalf's intent presented a factual issue for the jury. Only if he established the account with a fraudulent intent could he be found guilty. Conviction did not rest merely upon a finding that the bank account lacked funds

to pay the checks he drew. There was evidence upon which the jury could find that the bank account was opened with fraudulent intent. Prior to the offenses for which he was indicted, Metcalf had not used the [fictitious name] and no one by that name could be located at the address Metcalf gave the bank when he opened the . . . account.

As in *Metcalf,* we find there is ample evidence upon which the jury could determine the Lawhorn account was opened with fraudulent intent. The Evidence shows a fictitious name was used to open the Lawhorn account with the intent to defraud. We therefore find the account itself was fictitious and false and there is, therefore, evidence appellant is guilty of causing to be falsely made a written instrument and/or uttering or publishing as true a false instrument and/or of willingly acting or assisting in such with an intention to defraud. Accordingly, the appellant's conviction is

Affirmed.

GOOLSBY, J., and HOWARD, A.J., concur.