649 S.E.2d 41

**STATE of South Carolina, Respondent,**

v.

**Rebecca LEE–GRIGG, Appellant.**

**No. 4237.**

Court of Appeals of South Carolina.

Heard April 3, 2007.

Decided April 16, 2007.

Rehearing Denied Aug. 24, 2007.

C. Rauch Wise, of Greenwood, and James W. Bannister of Greenville, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Special Assistant Attorney General Amie L. Clifford, all of Columbia; and Solicitor Jerry W. Peace, of Greenwood, for Respondent.

ANDERSON, J.

Appellant Rebecca Lee–Grigg ("Lee–Grigg") challenges her conviction for forgery, contending the trial court erred in denying her (1) motion for a directed verdict; (2) request to charge the jury on a good faith defense; and (3) request to instruct the jury on use of evidence of good character. We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

Lee–Grigg worked as the director of MEGS House, a shelter for abused women serving McCormick, Edgefield, Greenwood, and Saluda counties. In that capacity, she arranged for the relocation of an endangered victim to another state. Lee–Grigg planned to accompany the victim to assist with the transition. Initially Lee–Grigg sought financial assistance for relocation expenses from the South Carolina Victim's Assistance Network ("SCVAN"). SCVAN generally provides financial assistance to cover only a victim's expenses and reimburses mileage at less than the state reimbursement rate. Lee–Grigg found SCVAN's coverage inadequate. Subsequently, she contacted Police Chief Brooks ("Chief") of the

City of Greenwood ("City") to ask for help. The City furnished a vehicle and a driver to transport the victim. Lee–Grigg accompanied the driver and the victim to facilitate the relocation on October 10–11, 2003. The City paid for fuel and lodging for the driver and victim only; Lee–Grigg's costs were not covered. Lee–Grigg testified the Chief told her she could apply for reimbursement of the expenses the City paid in relocating the victim. Lee–Grigg emphasized the Chief assured her he would not apply for reimbursement of the City's costs.

Following the trip, Lee–Grigg submitted documents to SCVAN requesting reimbursement for the City's relocation expenditures. However, she represented those expenditures as her own. Included among the materials Lee–Grigg supplied was a "Travel Support Document" with the following attestation signed by Lee–Grigg:

I hereby certify or affirm that the above expenses were actually incurred by me as necessary traveling expenses in the performance of my official duties; any meals or lodging included in a conference or convention registration fee have been deducted from this travel claim, conforms with the requirements of local and grant laws, rules and regulations.

Lee–Grigg requested mileage reimbursement in the amount of $189.23 and attached copies of fuel receipts she obtained from the City's driver to support that request. The signature of the driver and the Chief's initials that appeared on the original fuel receipts were absent from the copies Lee–Grigg submitted to SCVAN. Lee–Grigg averred she concealed the driver's signature and the Chief's initials in order to obscure any trail that might lead to discovery of the victim's new location. Lee–Grigg additionally enclosed:

- a receipt for fuel costs incurred on October 8, 2003 involving transportation of the victim from Charleston to Greenwood
- copies of meal receipts that obviously included meals other than the victim's
- a copy of a Holiday Inn receipt for $88.76, paid in full by the City's driver.

Shortly thereafter, the City's driver contacted SCVAN to inquire about obtaining reimbursement for the same relocation

costs. SCVAN identified the potential duplication of reimbursement requests. A SLED investigation ensued leading to Lee–Grigg's indictment and conviction for forgery. Lee–Grigg was sentenced to two years of imprisonment, suspended to one year of probation.

## ISSUES

(1) Did the trial court err in denying Lee–Grigg's motion for a directed verdict when the document in question was a genuine document with a genuine signature, and the State failed to prove the document in question was falsely made, forged or counterfeited?

(2) Did the trial court err in failing to instruct the jury on the defense of good faith?

(3) Did the trial court err in failing to charge the jury on the use of evidence of good character when Lee–Grigg presented testimony of her good character and reputation in the community?

## STANDARD OF REVIEW

In criminal cases, an appellate court sits to review errors of law only. *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006); *State v. Douglas,* 367 S.C. 498, 506, 626 S.E.2d 59, 63 (Ct.App.2006) *cert. pending; State v. Wood,* 362 S.C. 520, 525, 608 S.E.2d 435, 438 (Ct.App.2004). Thus, an appellate court is bound by the trial court's factual findings unless they are clearly erroneous. *Id.; State v. Landis,* 362 S.C. 97, 101, 606 S.E.2d 503, 504 (Ct.App.2004). On appeal, we are limited to determining whether the trial court abused its discretion. *State v. Walker,* 366 S.C. 643, 653, 623 S.E.2d 122, 127 (Ct.App.2005). The conduct of a criminal trial is left largely to the sound discretion of the trial judge, who will not be reversed absent a prejudicial abuse of discretion. *State v. Bridges,* 278 S.C. 447, 448, 298 S.E.2d 212, 212 (1982); *State v. Patterson,* 367 S.C. 219, 230, 625 S.E.2d 239, 245 (Ct.App.2006) *cert. pending.*

## LAW/ANALYSIS

### I. Directed Verdict

Lee–Grigg contends the trial court erred in denying her motion for a directed verdict because the State failed to

prove all of the statutory elements for the charge of forgery. Specifically, Lee–Grigg alleges the document in question was not falsely made, forged, or counterfeited as required by statute because the document was a genuine document that contained a genuine signature. We disagree.

When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight. *State v. Weston,* 367 S.C. 279, 292, 625 S.E.2d 641, 648, (2006); *State v. Stanley,* 365 S.C. 24, 41–42, 615 S.E.2d 455, 464 (Ct.App.2005); *State v. Padgett,* 354 S.C. 268, 271, 580 S.E.2d 159, 161 (Ct.App.2003). A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged. *State v. Cherry,* 361 S.C. 588, 593, 606 S.E.2d 475, 478 (2004) (citing *State v. McKnight,* 352 S.C. 635, 642, 576 S.E.2d 168, 171 (2003)); *State v. Crawford,* 362 S.C. 627, 633, 608 S.E.2d 886, 889 (Ct.App. 2005); *Padgett,* 354 S.C. at 271, 580 S.E.2d at 161. When reviewing a denial of a directed verdict, an appellate court views evidence and all reasonable inferences in the light most favorable to the State. *Weston,* 367 S.C. at 292, 625 S.E.2d at 648; *State v. Zeigler,* 364 S.C. 94, 101, 610 S.E.2d 859, 863 (Ct.App.2005) *cert. denied; State v. Al–Amin,* 353 S.C. 405, 578 S.E.2d 32 (Ct.App.2003). If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, we must find the case was properly submitted to the jury. *Weston,* 367 S.C. at 292–93, 625 S.E.2d at 648; *Cherry,* 361 S.C. at 593, 606 S.E.2d at 478; *McKnight,* 352 S.C. at 642, 576 S.E.2d at 172; *State v. Condrey,* 349 S.C. 184, 190, 562 S.E.2d 320, 323 (Ct.App.2002); *see also State v. Horton,* 359 S.C. 555, 563, 598 S.E.2d 279, 284 (Ct.App.2004) (noting judge should deny motion for directed verdict if there is any direct or substantial circumstantial evidence that reasonably tends to prove the defendant's guilt, or from which guilt may be fairly and logically deduced). The appellate court may reverse the trial court's denial of a motion for a directed verdict only if there is no evidence to support the court's ruling. *State v. Gaster,* 349 S.C. 545, 564 S.E.2d 87 (2002).

The trial court should grant a directed verdict when the evidence merely raises a suspicion that the defen-

dant is guilty. *State v. Arnold*, 361 S.C. 386, 390, 605 S.E.2d 529, 531 (2004). "Suspicion" implies a belief or opinion as to guilt based upon facts or circumstances which do not amount to proof. *Cherry*, 361 S.C. at 594, 606 S.E.2d at 478. However, a trial court is not required to find that the evidence infers guilt to the exclusion of any other reasonable hypothesis. *Cherry*, 361 S.C. at 594, 606 S.E.2d at 478.

Section 16–13–10 of the South Carolina Code of Laws (2003) provides, in pertinent part:

(A) It is unlawful for a person to

(1) falsely make, forge, or counterfeit; cause or procure to be falsely made, forged, or counterfeited; or wilfully act or assist in the false making, forging, or counterfeiting of any writing or instrument of writing;

(2) utter or publish as true any false, forged, or counterfeited writing or instrument of writing;

... or ...

(4) willingly act or assist in any of the premises, with an intention to defraud any person.

■■■ Forgery consists of the fraudulent making or altering of a writing by one intending to defraud, prejudice, or damage another person. *Black's Law Dictionary* 650 (6th ed.1990). It has been defined as a false making of an instrument, on its face purporting to be good and valid, with a design to defraud, prejudice, or damage another. *See State v. Walton*, 107 S.C. 353, 356, 93 S.E. 5, 6 (1917); *State v. Floyd*, 36 S.C.L. 58 (5 Strob. 58) (S.C.App.L.1850).

In order to constitute forgery by uttering or publishing a forged instrument or writing the instrument must be uttered or published as true or genuine, known by the party uttering or publishing it that it is false, forged, or counterfeited, and intended to prejudice, damage or defraud another person. *See* S.C.Code Ann. § 16–13–10(A) (2003); *State v. Pace*, 337 S.C. 407, 417, 523 S.E.2d 466, 471 (Ct.App.1999) (citing *State v. Wescott*, 316 S.C. 473, 450 S.E.2d 598 (Ct.App.1994)); *State v. Singletary*, 187 S.C. 19, 196 S.E. 527 (1938); *State v. Murray*, 72 S.C. 508, 52 S.E. 189 (1905).

■■■ The crime of forgery involves: (1) a false making or material alteration of some written instrument; (2) that is the

apparent foundation of some legal liability; and (3) that is uttered or published with the intent to defraud or prejudice another. *Walton*, 107 S.C. at 356, 93 S.E. at 6 (defining the offense of forgery as "[t]he material altering, with intent to defraud, of any writing, which, if genuine, might apparently be the foundation of a legal liability."); *see also* William Shepard McAninch & W. Gaston Fairey, *The Criminal Law of South Carolina* 421 (4th ed.2002).

## A. False Making or Material Alteration of a Written Instrument

A material alteration of an instrument makes it speak a language different in legal effect from the language it originally spoke, or generates some change in the rights, interests, or obligations of the parties to the writing. McAninch at 422. The alteration may be accomplished by additions to or subtractions from the instrument, such as erasures or deletions of words, numbers, or symbols that change the instrument's effect. *See State v. Wescott*, 316 S.C. 473, 477–78, 450 S.E.2d 598, 601 (Ct.App.1994). "As a general rule, forgery cannot be committed by the genuine making of an instrument for the purpose of defrauding; however, the making of a false instrument is as much a forgery as is the false making of an instrument." *Id.* at 477–78, 450 S.E.2d at 601 (affirming forgery conviction for passing a legitimate check, drawn on a legitimate account with an authorized signature because the account was opened with intent to defraud). "Forgery is the alteration of a deed or writing, in a material part, to the prejudice of another, as well as where the whole deed or writing is forged." *State v. Floyd*, 36 S.C.L. 58 (5 Strob. 58) (S.C.App.L.1850) (proclaiming "[t]he alteration of a receipt for money, by erasing the word 'part,' and inserting, in lieu of it, the words 'full up to date,' constitutes the offence of forgery....").

> [T]he mischief is just as fully and conveniently perpetrated by one of various alterations, as it could be by fabricating the whole instrument. A note or a receipt is either genuine, or it is not. If it be falsely and fraudulently altered in a particular making, it speaks a different language, calculated to produce a different result in its operation, to the preju-

dice of some one who is designed to be defrauded or injured thereby.

*Id.*

"Only those alterations which change, or initially create, the legal meaning of the document will suffice." McAninch at 422 ("Alteration of an immaterial part of the document does not affect its genuineness.").

## B. Legal Efficacy of the Instrument

To constitute forgery, it is essential that the falsely made or altered instrument possess some apparent legal efficacy; otherwise it would have no tendency to defraud. *State v. Webster,* 88 S.C. 56, 58, 70 S.E. 422, 423 (1911). As long as a forged instrument is the apparent foundation of legal liability, "the instrument need not be complete in all its particulars to amount to forgery." McAninch at 422 citing *State v. Bullock,* 54 S.C. 300, 32 S.E. 424 (1899).

Any writing that may defraud or prejudice another, or that, if genuine, would have legal effect or operate as the foundation of another man's liability may be the subject of forgery. It is sufficient if the forged instrument, believed to be genuine, might have operated to the prejudice of another. *See Webster,* 88 S.C. at 58, 70 S.E. at 423.

## C. Intent to Defraud

"Intent to defraud means an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property." *Black's Law Dictionary,* 423 (6th ed.1990).

"A defendant may not be convicted of a criminal offense unless the State proves beyond a reasonable doubt that he acted with the criminal intent, or mental state, required for a particular offense." *State v. Fennell,* 340 S.C. 266, 271, 531 S.E.2d 512, 515 (2000). Intent to defraud is an essential element of the crime of forgery. *State v. Lyle,* 125 S.C. 406, 118 S.E. 803, 809 (1923). One possesses the intent required for a forgery conviction if he "willingly act[s] or assist[s] in any of the [proscribed] premises, with an intention

to defraud any person." S.C.Code Ann. § 16–13–10 (2003); *see State v. Zimmerman,* 79 S.C. 289, 60 S.E. 680 (1908) (ruling that an indictment for forgery need not charge that the forgery was complete in all its parts; *the essence of the crime is the intent to defraud,* and the indictment cannot be defeated merely because all the steps necessary to perfect the fraud are not set out therein) (emphasis added).

To constitute the crime of forgery, it is not necessary that anyone should have been actually injured or defrauded by the false writing or alteration; the mere possibility of injury will suffice. *Webster,* 88 S.C. at 58, 70 S.E. at 423. It is sufficient if the false instrument was made with intent to defraud and has the potential to prejudice the rights of another accepting it as true. *See* William Shepard McAninch & W. Gaston Fairey, *The Criminal Law of South Carolina* 420 (4th ed. 2002) ("It is not essential that the scheme succeed, that anyone actually be defrauded or injured in any way. The creation of the false document or the attempt to pass a false document, if accompanied by the requisite intent, will suffice." (quoting *State v. Jones,* 1 McMul. 236 (1841))). The intent to defraud need not be targeted at any particular person. A possibility or probability that some person will be defrauded is sufficient. *Id.*

Moreover, the intent need not include the expectation of personal advantage to the accused. *Brown v. Bailey,* 215 S.C. 175, 54 S.E.2d 769, 773 (1949) (articulating that, in proving forgery, it is not necessary to show the defendant profited or intended to profit by the forgery). The intention to prejudice or to assist in prejudicing some other person is all that is required. *Id.*

Intent is a question of fact and is ordinarily for jury determination. *State v. Tuckness,* 257 S.C. 295, 299, 185 S.E.2d 607, 607 (1971). Because intent is seldom susceptible to proof by direct evidence, the circumstances surrounding the making or uttering of the forged instrument are relevant for establishing the requisite intent. *State v. Cherry,* 348 S.C. 281, 288, 559 S.E.2d 297, 300 (Ct.App.2001) *aff'd* 361 S.C. 588, 606 S.E.2d 475 (2004) (quoting *Tuckness,* 257 S.C. at 299, 185 S.E.2d at 607). "[I]ntent may be shown by acts and conduct from which a jury may naturally and reasonably infer intent."

*State v. Foust,* 325 S.C. 12, 16, 479 S.E.2d 50, 52 n. 4 (1996); *see State v. Lyle,* 125 S.C. 406, 118 S.E. 803, 809 (1923); *State v. Murray,* 72 S.C. 508, 52 S.E. 189, 191 (1905) ("The intent is only matter of circumstance, which naturally follows and springs out of the facts."); *accord Terrell v. State,* 268 Ga.App. 173, 601 S.E.2d 500 (2004) (determining criminal intent may be found by the jury upon consideration of words, conduct, demeanor, motive, and all other circumstances connected with the prosecuted act); *In re Washington,* 81 Ohio St.3d 337, 691 N.E.2d 285 (1998) (finding the intent of an accused person dwells in his mind; not being ascertainable by exercise of any or all of the senses, it can never be proved by direct testimony of third person, and it need not be; it must be gathered from surrounding facts and circumstances under proper instructions from court); *State v. Lowery,* 667 S.W.2d 52 (Tenn.1984) (recognizing a jury may infer a criminal defendant's intent from the surrounding facts and circumstances).

██ "[A] person who causes a particular result is said to act purposefully if 'he consciously desires that result, whatever the likelihood of that result happening from his conduct.' " *State v. Jefferies,* 316 S.C. 13, 19, 446 S.E.2d 427, 431 n. 7–8 (1994) (quoting *United States v. Bailey,* 444 U.S. 394, 405, 100 S.Ct. 624, 632, 62 L.Ed.2d 575, 587 (1980)). Concomitantly, a person "is said to act knowingly if he is aware the 'result is practically certain to follow from his conduct, whatever his desire may be as to that result.' " *Id.*

In the instant case, the State presented undisputed evidence that Lee–Grigg applied to SCVAN to obtain reimbursement for expenses she admittedly did not incur. By her signature Lee–Grigg attested that the application document was a true representation of her costs. In support of her request for reimbursement Lee–Grigg attached the City's fuel receipts that she later confirmed she had altered. The document, viewed in its entirety, would unquestionably produce an operative result different from the result it would have produced unaltered. If Lee–Grigg had successfully obtained reimbursement from SCVAN, the City might have been precluded from recovering its relocation expenses. Alternatively, SCVAN may have inadvertently disbursed funds twice for the same relocation expenses. SCVAN's accidental complicity in Lee–Grigg's undertaking may have threatened its future funding.

According to her own testimony, Lee–Grigg knew she had not incurred the relocation expenses; she knew the document misrepresented, concealed, or otherwise communicated false information.

Though denying any knowledge of wrongdoing, Lee–Grigg nevertheless tendered an instrument that did not genuinely represent the facts as they occurred.

Evidence supported the State's allegation that Lee–Grigg's conduct met the statutory definition of forgery: the willful false making of an instrument, uttered as true and deemed to be genuine, with the intent that it might operate to the prejudice of another. Viewed in a light most favorable to the State, Lee–Grigg's guilt may be reasonably, fairly, and logically deduced from the evidence. The case was properly submitted to the jury.

## II. Jury Charges

Generally, a trial court is required to charge only the current and correct law of South Carolina. *State v. Rayfield,* 369 S.C. 106, 119, 631 S.E.2d 244, 251 (2006); *Sheppard v. State,* 357 S.C. 646, 665, 594 S.E.2d 462, 472–73 (2004); *State v. Zeigler,* 364 S.C. 94, 106, 610 S.E.2d 859, 865 (Ct.App. 2005); *State v. Brown,* 362 S.C. 258, 261–62, 607 S.E.2d 93, 95 (Ct.App.2004). A jury charge is correct if it contains the correct definition of the law when read as a whole. *Rayfield,* 369 S.C. at 119, 631 S.E.2d at 251; *Sheppard,* 357 S.C. at 665, 594 S.E.2d at 473; *State v. Patterson,* 367 S.C. 219, 231, 625 S.E.2d 239, 245 (Ct.App.2006) *cert. pending; State v. Adkins,* 353 S.C. 312, 318, 577 S.E.2d 460, 463 (Ct.App.2003).

The law to be charged to the jury is determined by the evidence presented at trial. *State v. Knoten,* 347 S.C. 296, 302, 555 S.E.2d 391, 394 (2001); *State v. Cole,* 338 S.C. 97, 101, 525 S.E.2d 511, 512 (2000); *State v. Brown,* 362 S.C. 258, 262, 607 S.E.2d 93, 95 (Ct.App.2004); *State v. Condrey,* 349 S.C. 184, 194, 562 S.E.2d 320, 325 (Ct.App.2002); *State v. Harrison,* 343 S.C. 165, 172, 539 S.E.2d 71, 74 (Ct.App.2000) citing *State v. Hill,* 315 S.C. 260, 262, 433 S.E.2d 848, 849 (1993). A trial court has a duty to give a requested instruction that is supported by the evidence and correctly states the law applicable to the issues. *State v. Peer,* 320 S.C. 546, 553,

466 S.E.2d 375, 380 (Ct.App.1996); *see also State v. Austin,* 299 S.C. 456, 458, 385 S.E.2d 830, 831 (1989) (acknowledging that a defendant is generally entitled to a requested jury instruction if it is a correct statement of the law on an issue raised by the indictment); *State v. West,* 138 S.C. 421, 136 S.E. 736, 737 (1927) (finding the court has a duty to charge jury as to law applicable to facts brought out in testimony).

A trial court commits reversible error if it fails to give a requested charge on an issue raised by the evidence. *State v. White,* 361 S.C. 407, 412, 605 S.E.2d 540, 542 (2004); *State v. Burriss,* 334 S.C. 256, 262; 513 S.E.2d 104, 108 (1999); *Harrison,* 343 S.C. at 172, 539 S.E.2d at 74. On review of a jury charge, an appellate court considers the charge as a whole in view of the evidence and issues presented at trial. *Welch v. Epstein,* 342 S.C. 279, 311, 536 S.E.2d 408, 425 (Ct.App.2000). A confusing charge alone is insufficient to warrant reversal. *State v. Kerr,* 330 S.C. 132, 144–45, 498 S.E.2d 212, 218 (Ct.App.1998) (citing *State v. Jefferies,* 316 S.C. 13, 22, 446 S.E.2d 427, 432 (1994)); *see also State v. Peay,* 321 S.C. 405, 410, 468 S.E.2d 669, 672 (Ct.App.1996) (concluding that the trial court commits reversible error when it fails to give requested charge on issue raised by indictment and evidence presented).

### A. Good Faith Defense

Lee–Grigg asserts the trial court erred in failing to charge the jury as follows: "[i]f one in good faith or ignorance of the effect of his act, without intent to defraud, makes or alters an instrument, he is not guilty of forgery." We disagree.

Our time-tested precedent establishes:

[i]t may well be that a person may, most innocently and with perfect good faith, make representations which prove to be false in fact, in which case there would be an absence of any criminal intent; but if the representations are not only false, but known to be so by the person who makes them, then the intent to deceive would necessarily be inferred.

*State v. Haines,* 23 S.C. 170 (1885).

Lee–Grigg implores this court to consider that she relied on the Chief's assurance he would not seek reimburse-

ment and, therefore, acted in good faith without fraudulent intent. Our case law dictates a different conclusion. It is no defense to the charge of forgery that the defendant considered herself justly entitled to what she would obtain by means of forgery. *State v. Webster,* 88 S.C. 56, 58, 70 S.E. 422, 423 (1911). Likewise, it is no defense that the act was done under the instructions or orders of another. *State v. Blurton,* 352 S.C. 203, 573 S.E.2d 802 (2002) (emphasizing that the "orders of another" jury charge is a correct proposition of law). Furthermore, it is no defense if it was done in partnership or cooperation with another person. *Brown v. Bailey,* 215 S.C. 175, 54 S.E.2d 769 (1949) (stating that, both under the forgery statute and the common law, a person may commit forgery by being present and knowingly aiding and abetting another in the perpetration of the crime).

Advancing the position articulated in *Mathews v. United States,* Lee–Grigg urges that "[a]s a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). However, we are not aware of any South Carolina authority acknowledging a good faith defense to the crime of forgery. Luculently, if one operates with criminal intent, one does not operate in good faith. Fraudulent intent is the essence of the crime of forgery. Consequently, a comprehensive jury instruction on what constitutes fraudulent intent obviates a good faith charge.

In the instant case, the trial court delivered the following jury instruction on the mental state required for the crime of forgery:

The State must prove beyond a reasonable doubt that the defendant willfully and knowingly acted in falsely making, forging, counterfeiting, altering, changing, defacing or erasing or causing to be falsely made, forged, counterfeited, altered, changed, defaced or erased any record, writing or other written instrument with an intent to defraud any person or organization. A fraudulent intent is the essence of the crime of forgery. It is not necessary, however, to make out the crime of forgery, that any person or any organization be actually defrauded or sustained any loss because of the forgery. The terms willfully and knowingly

in connection with the word act, such as the State must prove that the defendant *willfully and knowingly acted, those terms used in that area mean a wrongful act which is done by a person who knows the difference between right and wrong and that the act is wrong and who in spite of such knowledge proceeds to do the wrongful act.*

An intent to defraud is an intent to deceive another person or organization for the purpose of monetary gain or induce the other party to part with property or money and accomplish that purpose by some false statement, false pretense, wrongful concealment or suppression of truth or by any other artifice or act which is intended to deceive.

The making of a false instrument is as much of a forgery as is the false making of an instrument. The false making of an instrument is forgery, and the making of a false instrument is forgery. In order for an accused person to be convicted of the crime of forgery the State must prove three essential elements beyond a reasonable doubt.

That the instrument was uttered or published, uttered means to distribute it, published means disseminate it or give it to another, as true and genuine.

Second, it must be known by the person who uttered or published the instrument that it was false, forged or counterfeited.

And third, that it must be uttered or published with an intention to prejudice, damage or defraud another person or organization.

It is not necessary that the State show injury or loss to make out the offense of forgery or that the defendant profited or intended to profit by the deception. The intent of the accused may be shown by acts and conducts of the accused and by other circumstances from which you may naturally and reasonably infer intent.

Now, criminal intent is a necessary element of each crime that must be proved by the State beyond a reasonable doubt. Criminal intent is always a matter that must be determined by the jury from the circumstances surrounding the situation. There is no way to prove criminal intent to any mathematical certainty. There is no way that medical

science can dissect a person's brain and determine what he or she had in mind at the time in question.

So, the law says that criminal intent may be inferred from the circumstances shown to have been in existence or have existed at the time in question. This is how the jury makes a determination of whether or not the element of intent as required was present. Criminal intent is a state of mind which operates jointly with an act in the commission of a crime. *Criminal intent is a mental state, a conscious wrongdoing.* So, it is up to you the jury to determine what the defendant intended to do, based upon the circumstances shown to have existed.

The State must prove criminal intent beyond a reasonable doubt just as the State must prove every element of the crime beyond a reasonable doubt, as was already explained to you. . . . While the State may prove motive, it is unnecessary that the State prove motive but the State must prove criminal intent.

(Emphasis added).

The jury requested that the trial court clarify the definition of criminal intent, and the trial court reiterated the major portions of the original charge. Both the original and subsequent instructions elaborated on the willful and knowing commission of the wrongful act, emphasizing that the act must be a "conscious wrongdoing"—the passage of an instrument as "true and genuine" and known by the passer to misrepresent, conceal, or otherwise communicate false information. The trial court explained the terms willfully and knowingly described actions of a person who knew right from wrong, yet proceeded to do a wrongful act in spite of that knowledge.

Reading the trial court's instruction as a whole, we verify that it accurately charged the correct law of South Carolina by thoroughly defining and describing the mental state for the crime of forgery. We discern no error in the trial court refusing to issue a good faith defense instruction.

### B. Character Evidence

 Lee–Grigg maintains the trial court erred in denying her request for a jury instruction on the use of evidence of her

good character. We agree the jury should have been charged on evidence of Lee–Grigg's good character.

Rule 404(a)(1), SCRE, allows evidence of a pertinent character trait to be offered by the defendant or offered by the State to rebut the defendant's character trait evidence. *State v. Braxton,* 343 S.C. 629, 635 n. 1, 541 S.E.2d 833, 836 n. 1 (2001). Accordingly, our supreme court has held the good reputation of the accused, if proved, may be taken into consideration by the jury in determining whether or not he or she committed the crime charged. *State v. Harrison,* 343 S.C. 165, 171–72, 539 S.E.2d 71, 74 (Ct.App.2000) (citing *State v. Hill,* 129 S.C. 166, 170, 123 S.E. 817, 818 (1924) ("Evidence of the defendant's good reputation for peace and good order is strongly persuasive of his good character in that respect, and is offered for the very purpose stated by the circuit judge, to show the improbability that the defendant would have committed or did commit the crime charged.")); *State v. Lyles,* 210 S.C. 87, 41 S.E.2d 625 (1947).

> Generally, where requested and there is evidence of good character, a defendant is entitled to an instruction to the effect that evidence of good character and good reputation may in and of itself create a doubt as to guilt and should be considered by the jury, along with all the other evidence, in determining the guilt or innocence of the defendant.

*State v. Green,* 278 S.C. 239, 240, 294 S.E.2d 335, 335 (1982).

In the case *sub judice,* Lee–Grigg requested the following jury instruction: "Good character of a defendant, when it is established to the satisfaction of the jury, should be considered by them just as they would consider evidence of any other fact." The trial court declined to issue the charge, finding it to be in the nature of argument. The record, on the other hand, contains testimony regarding Lee–Grigg's good character and reputation in the community. One witness averred "she's a good woman, that I know about, yes." A second witness, a former shelter board member, testified:

Q: Based on your involvement with Becky Lee–Grigg do you have an opinion as to her character in the community?

A: Yes, I do.

Q: What is that opinion?

A: I think without question she is the most straightforward person of integrity and honesty that I have ever seen.

Q: Do you have an opinion as to her reputation for truth and veracity?

A: Yes, I do.

Q: Knowing that reputation, would you believe her under oath?

. . .

A: I would not believe that she would be capable of doing anything that would be wrong. I just think Becky is such a straight arrow, and I used to jokingly say to her, "You're the most predictable person I have ever seen, you will do right, regardless."

Q: So you would believe her under oath?

A: Yes.

Q: Any question about that?

A: Not at all.

Lee–Grigg presented evidence of her good character and, accordingly, requested a charge on that evidence. The trial court erred in denying her request.

## C. Harmless Error

 The determination that the trial court erred in failing to instruct the jury on evidence of Lee–Grigg's good character does not end the inquiry. The refusal to charge the jury with her requested instruction is subject to harmless error analysis.

At the outset, we identify the trial court's error as procedural as opposed to structural. In *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), the United State Supreme Court explained certain "structural defects in the constitution of the trial mechanism" result in deprivations that affect the entire framework within which the trial is conducted, from beginning to end. These "structural" defects compromise the reliability with which a criminal trial functions as a vehicle for determining guilt or innocence and are not subject to harmless error analysis. *Id.* citing *Rose v. Clark*, 478 U.S. 570, 577–78, 106 S.Ct. 3101, 92 L.Ed.2d 460

(1986). The *Fulminante* court identified the following examples of structural defects not subject to harmless error analysis: the total deprivation of the right to counsel at trial, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); the lack of an impartial judge, *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); the unlawful exclusion of members of the defendant's race from a grand jury, *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); the right to self-representation at trial, *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); and the right to public trial, *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). *Id.*

■ Constrastively, a trial error occurring in the presentation of the case to the jury may "be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Fulminante*, 499 U.S. at 307–08, 111 S.Ct. 1246. Generally, "the Court has applied harmless-error analysis to a wide range of errors and has recognized that most constitutional errors can be harmless." *Id.* at 306–07, 111 S.Ct. 1246 (citing *e.g., Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) (unconstitutionally overbroad jury instructions at the sentencing stage of a capital case); *Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) (admission of evidence at the sentencing stage of a capital case in violation of the Sixth Amendment Counsel Clause); *Carella v. California*, 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (jury instruction containing an erroneous conclusive presumption); *Pope v. Illinois*, 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987) (jury instruction misstating an element of the offense); *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (jury instruction containing an erroneous rebuttable presumption); *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (erroneous exclusion of defendant's testimony regarding the circumstances of his confession); *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (restriction on a defendant's right to cross-examine a witness for bias in violation of the Sixth Amendment Confrontation Clause); *Rushen v. Spain*, 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (denial of a defendant's right to be present at trial);

*United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (improper comment on defendant's silence at trial, in violation of the Fifth Amendment Self–Incrimination Clause); *Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982) (statute improperly forbidding trial court's giving a jury instruction on a lesser included offense in a capital case in violation of the Due Process Clause); *Kentucky v. Whorton,* 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979) (failure to instruct the jury on the presumption of innocence); *Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977) (admission of identification evidence in violation of the Sixth Amendment Counsel Clause); *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973) (admission of the out-of-court statement of a nontestifying codefendant in violation of the Sixth Amendment Counsel Clause); *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) (confession obtained in violation of *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (admission of evidence obtained in violation of the Fourth Amendment); *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (denial of counsel at a preliminary hearing in violation of the Sixth Amendment Confrontation Clause)).

> "In applying harmless-error analysis to these many different constitutional violations, the Court has been faithful to the belief that the harmless-error doctrine is essential to preserve the 'principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.'"

*Id.* at 308, 90 S.Ct. 1999 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

South Carolina courts acknowledge the appropriateness of harmless error analysis in cases where procedural errors rather than defects in the trial mechanism itself affect a defendant's constitutional rights. *See State v. Burkhart,* 371 S.C. 482, 489 n. 3, 640 S.E.2d 450, 454 n. 3 (2007) (Pleicones, J. concurring in a separate opinion (citing *Arnold v. State,* 309

S.C. 157, 420 S.E.2d 834 (1992))); *State v. Mouzon,* 326 S.C. 199, 485 S.E.2d 918 (1997); *State v. Jefferies,* 316 S.C. 13, 21, 446 S.E.2d 427, 431–32 (1994); *Taylor v. State,* 312 S.C. 179, 181, 439 S.E.2d 820, 821 (1993); *Arnold,* 309 S.C. at 172, 420 S.E.2d at 842.

 "Error is harmless beyond a reasonable doubt where it did not contribute to the verdict obtained." *State v. Pagan,* 369 S.C. 201, 212, 631 S.E.2d 262, 267 (2006) (citing *Arnold,* 309 S.C. at 172, 420 S.E.2d at 842 (1992)); *State v. Mizzell,* 349 S.C. 326, 333, 563 S.E.2d 315, 318–19 (2002); *State v. Sherard,* 303 S.C. 172, 175, 399 S.E.2d 595, 596 (1991) ("Error in a criminal prosecution is harmless when it could not reasonably have affected the result of the trial."). "An error is not reversible unless it is material and prejudicial to the substantial rights of the appellant." *Visual Graphics Leasing Corp., Inc. v. Lucia,* 311 S.C. 484, 489, 429 S.E.2d 839, 841 (Ct.App.1993).

 No definite rule of law governs finding an error harmless; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case. *State v. Gillian,* 360 S.C. 433, 454–55, 602 S.E.2d 62, 73 (Ct.App.2004) (*citing State v. Reeves,* 301 S.C. 191, 391 S.E.2d 241 (1990)); *State v. Mitchell,* 286 S.C. 572, 336 S.E.2d 150 (1985); *State v. Curry,* 370 S.C. 674, 636 S.E.2d 649 (Ct.App.2006); *State v. Pagan,* 357 S.C. 132, 591 S.E.2d 646 (Ct.App.2004) *aff'd as modified* 369 S.C. 201, 631 S.E.2d 262 (2006). Whether an error is harmless depends on the particular facts of each case, including:

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course the overall strength of the prosecution's case.

*Mizzell,* 349 S.C. at 333, 563 S.E.2d at 318–19 (*quoting Van Arsdall,* 475 U.S. at 684, 106 S.Ct. 1431).

 For the error to be harmless, we must determine "beyond a reasonable doubt the error complained of did not contribute to the verdict obtained." *Taylor,* 312 S.C. at 181, 439 S.E.2d at 821 (citing Arnold, 309 S.C. at 165, 420 S.E.2d at

839); *Jefferies,* 316 S.C. at 22, 446 S.E.2d at 432; *State v. Buckner,* 341 S.C. 241, 247, 534 S.E.2d 15, 18 (Ct.App.2000) (citing *State v. Andrews,* 324 S.C. 516, 479 S.E.2d 808 (Ct.App. 1996)). "[A]n insubstantial error not affecting the result of the trial is harmless where 'guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached.'" *Pagan,* 369 S.C. at 212, 631 S.E.2d at 267 (quoting *State v. Bailey,* 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989)); *State v. Adams,* 354 S.C. 361, 381, 580 S.E.2d 785, 795 (Ct.App.2003); *see also State v. Primus,* 349 S.C. 576, 564 S.E.2d 103 (2002) (holding assistant solicitor's improper comment, during closing argument was harmless error, where evidence of guilt was overwhelming) *overruled on other grounds; State v. Kelley,* 319 S.C. 173, 460 S.E.2d 368 (1995) (noting this court will not set aside conviction for insubstantial errors not affecting result when guilt is conclusively proven by competent evidence, such that no other rational conclusion could be reached).

 To warrant reversal based on the trial court's failure to give a requested jury instruction, the failure must be both erroneous and prejudicial. *State v. Taylor,* 356 S.C. 227, 231, 589 S.E.2d 1, 3 (2003); *State v. Patterson,* 367 S.C. 219, 232, 625 S.E.2d 239, 245 (2006) *cert pending; State v. Harrison,* 343 S.C. 165, 172, 539 S.E.2d 71, 74 (Ct.App.2000) (citing *State v. Hughey,* 339 S.C. 439, 450, 529 S.E.2d 721, 727 (2000)). Prejudice to the appellant's case is a prerequisite to reversal of a verdict due to an erroneous jury charge. *State v. Williams,* 367 S.C. 192, 195–96, 624 S.E.2d 443, 445 (Ct.App. 2005); *State v. Adkins,* 353 S.C. 312, 318, 577 S.E.2d 460, 463 (Ct.App.2003); *Brown v. Pearson,* 326 S.C. 409, 417, 483 S.E.2d 477, 481 (Ct.App.1997) (holding "[a]n error not shown to be prejudicial does not constitute grounds for reversal"). Failure to give requested jury instructions is not prejudicial error when the instructions given afford the proper test for determining the issues. *State v. Burkhart,* 350 S.C. 252, 263, 565 S.E.2d 298, 304 (2002) (citation omitted).

*Arnold v. State* provides a reviewing court with the accepted framework for analyzing a defective jury instruction for harmless error. 309 S.C. at 166, 420 S.E.2d at 838.

> To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. . . .
>
> Before reaching such a judgment, a court must take two quite distinct steps. First, it must ask what evidence the jury actually considered in reaching its verdict . . . [Secondly, the Court] must weigh the probative force of the evidence as against the probative force of the presumption standing alone.

Following Arnold, the court applied this bifurcated analysis in *Taylor v. State* and reversed the defendant's conviction for possession with intent to distribute crack cocaine and marijuana. 312 S.C. at 183, 439 S.E.2d at 822. The court determined the jury heard sufficient evidence on possession, but no direct evidence on intent to distribute. Instead, the State relied on statutory inferences of the defendant's intent. *Id.* at 182, 439 S.E.2d at 821. In light of the trial court's jury instructions, those inferences became presumptions that the defendant was required to rebut. *Id.* "While there was sufficient evidence from which the jury could have inferred the Petitioner's intent to distribute the cocaine and marijuana, we cannot say beyond a reasonable doubt the jury did not base its verdict on the erroneous jury charge." *Id.*

In *State v. Jefferies,* our supreme court considered an inadequate and confusing jury charge on an element of the crime of kidnapping. 316 S.C. at 22, 446 S.E.2d at 432. Accordingly, the court weighed the facts the jury actually heard against the trial court's confusing jury charge to determine what effect, if any, it had on the verdict. *Id.* Concluding the jury's confusion centered on a defense that had no support in view of the facts, the supreme court decided, beyond a reasonable doubt, that the jury verdict did not rest on the inadequate charge. *Id.* at 23, 446 S.E.2d at 433.

Addressing the trial court's failure to instruct on good character evidence, our supreme court held the error was harmless when the whole record conclusively established the defendant's guilt. *State v. Green,* 278 S.C. 239, 240, 294 S.E.2d 335, 335 (1982). Concomitantly, in *State v. Harrison,* the Court of Appeals found the trial court's failure to issue a good

character charge was not harmless error because the State did not present overwhelming evidence of the defendant's guilt. 343 S.C. at 175, 539 S.E.2d at 76. The State charged and tried Harrison for simple possession of cocaine. Harrison admitted he attempted to purchase cocaine but denied he ever possessed the substance. *Id.* Harrison submitted evidence of his community involvement with adolescents and testimony about the assistance he provided to two single mothers. *Id.* at 170, 539 S.E.2d at 73. The State's main evidence consisted of the arresting officer's testimony that he saw Harrison drop the drugs. *Id.* at 174, 539 S.E.2d at 75. Harrison requested an instruction regarding the evidence of his good character, which the trial court denied. *Id.* at 173, 539 S.E.2d at 75. While deliberating, the jury repeatedly questioned the trial court, indicating it struggled significantly with the decision of Harrison's guilt. *Id.* We ruled the trial court's denial was reversible error:

> A different verdict might have been reached if the jury had been instructed that evidence of good character and good reputation may in and of itself create a doubt as to guilt and should be considered by the jury, along with all the other evidence, in determining the guilt or innocence of the defendant. The State did not present overwhelming evidence of Harrison's possession of cocaine, and did not try him for attempting to possess cocaine. Thus, the refusal to charge the requested instruction regarding evidence of good character and reputation was not harmless, but was reversible error.

*Id.* at 175, 539 S.E.2d at 76.

In the present case, the jury had before it evidence that Lee–Grigg signed a reimbursement request claiming she had incurred the relocation expenses. The State presented testimony that the City actually paid the costs of relocating the victim. Lee–Grigg professed she attempted to collect the funds because she believed the Chief had authorized her reimbursement. Furthermore, she asserted the Chief did not plan to claim reimbursement for the City's costs. Lee–Grigg averred she concealed the driver's signature and the Chief's initials on the City's fuel receipts to protect the victim's new location. At least two witnesses testified as to Lee–Grigg's good character and reputation in the community.

 After deliberating an hour, the jury asked for clarification on the definition of criminal intent. The trial court recharged criminal intent. Subsequently, the jury notified the trial court it was deadlocked, with "six for guilty, four not guilty, and two undecided." The trial court then issued an *Allen* charge.[1] Within an hour the jury returned a verdict of guilty.

Weighing the evidence the jury had before it against the failure of the trial court to issue the good character charge, we cannot conclude the trial court's error was harmless. The linchpin of Lee–Grigg's defense was her claim she lacked the criminal intent necessary to constitute the crime of forgery. She repeatedly testified the Chief authorized her claim for reimbursement and assured her the City would not attempt to recoup its costs. The Chief's testimony neither confirmed, nor denied Lee–Grigg's assertion. Because she relied on the Chief's authorization, Lee–Grigg contends she did not have the requisite intent to defraud.

Indubitably, the jury struggled with this case (to the point an *Allen* charge was given), and it seems fair to conclude the struggle centered around whether the State proved the critical element of criminal intent. In our view, the element of intent is inextricably connected to defendant's character. We cannot say, beyond a reasonable doubt, that the good character charge would not have made a difference in the outcome.

## CONCLUSION

We hold the State provided direct and substantial circumstantial evidence to support the trial court's denial of Lee–Grigg's motion for directed verdict. We adhere to our established precedent that good faith is not a defense to forgery. We rule that Lee–Grigg was entitled to a jury instruction on good character and the trial court's failure to issue that instruction was reversible error.

---

1. An *Allen* charge is "an instruction advising deadlocked jurors to have deference to each other's views, that they should listen, with a disposition to be convinced, to each other's argument; deriving its name from the case of *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896)." *Black's Law Dictionary,* 74 (6th ed.1990).

Accordingly, the trial court's ruling on the request to charge evidence of good character is

**REVERSED.**

KITTREDGE and SHORT, JJ., concur.