16245

BROWN v. BAILEY *ET AL.*

(54 S. E. (2d) 769)

*Messrs. O. L. Long,* of Laurens, and *C. T. Graydon,* of Columbia, *for Appellant,*

*Messrs. Blackwell, Sullivan & Wilson,* of Laurens, and *Price. & Poag,* of Greenville, *for Respondents,*

*Messrs: O. L. Long,* of Laurens, and *C. T. Graydon,* of Columbia, *for Appellant,* in reply,

August 2, 1949.

OXNER, Justice.

This is an action for malicious prosecution. The appeal is by the plaintiff from an order of non-suit granted at the close of her testimony. The prosecution complained of was upon a charge of forgery. The primary question for determination is whether want of probable cause may be reasonably inferred from the testimony.

For a long period of years certain heirs of the late M. S. Bailey, as partners under the firm name and style of M. S.

Bailey & Son, Bankers, conducted a banking business in the town of Clinton. It was managed by W. J. Bailey who owned the controlling interest and was designated as president. He was also a large stockholder in and president of two cotton mills at Clinton and had other large business interests.

H. W. Simmons occupied an office and had a used car lot across the street from the bank. In addition to buying and selling used cars, he conducted a small loan business and was also engaged in various other activities. The record does not definitely show when he commenced doing business. During 1943 and 1944, he was extensively engaged in buying from the public U. S. Savings Bonds at a considerable discount, paying $15.00 for bonds in the denomination of $18.75; in purchasing "looneys" from employees of the two mills of which Bailey was president at a 20% discount; and in selling cloth manufactured at these mills at above ceiling prices. It appears that "looneys" are tokens issued to mill employees in advance of the regular payday, which are later redeemed by the mill at face value. Credit for the operation of Simmons' business was obtained at the bank which discounted practically all notes and chattel mortgages taken by Simmons. His financial transactions with the bank were at times handled very irregularly. Frequently cash was obtained by sending mere informal written orders or notes to the bank, some of which were never entered upon the books but carried as cash items. Usually the account of Simmons was heavily overdrawn. According to appellant's testimony, W. J. Bailey either visited Simmons' office or called over the telephone almost daily and the business, while in the name of Simmons, was actually operated for the personal benefit of W. J. Bailey.

Mrs. Elsie Bryson, a sister of the appellant, commenced working for Simmons in a clerical capacity in 1941. She was a high school graduate and had previous office experience. Appellant, Mrs. Virginia Brown, was employed by Simmons some time later. She was also a high school grad-

uate and then in her early twenties. Prior to being employed by Simmons, she worked in a hosiery mill for about three years but had never worked in an office.

Over a period of about a year, beginning in November, 1943, appellant and her sister, under instructions from and on data furnished by Simmons, falsely made up approximately one hundred and fifty notes and mortgages on automobiles, aggregating in amount more than $100,000.00, which purported to represent cars sold by Simmons. All data inserted therein, including the amount and the description of the automobile contained in each paper, was fabricated. The bank was named as payee. The names used as makers were either fictitious or those of deceased persons who had resided in that locality. The signatures were varied so as to create the appearance that each mortgage was signed by a different person. On some of these papers appellant acted as a witness and signed the probating affidavit and on others this was done by her sister. From time to time when the bank called for collateral or security to take up cash orders issued by Simmons or to cover his overdrafts, fictitious mortgages would be delivered to the bank, usually along with others which were genuine and represented bona fide transactions, for which credit was duly given by the bank. Each week appellant and her sister prepared a list of all payments due on both the genuine and fictitious mortgages and forwarded same, together with the amount due, to the bank, which credited each paper with the amount paid. Finally, during the fall of 1944, according to the records of the bank, there was a default in a number of these fictitious papers. Notices were thereupon sent by the bank to the purported makers. These letters were returned by the Post Office Department with a notation that the addressees were unknown. Shortly thereafter a number of these fictitious mortgages were turned over to the bank's attorney for collection and claim and delivery proceedings were instituted for eight or ten of the cars therein described.

The Sheriff testified that when the claim and delivery papers were turned over to him, he was instructed by the bank's attorney not "to enter them on the writ book", but to see whether the automobiles could be found, although he doubted if they were in existence; that after interviewing Simmons and Watson, one of the tellers at the bank, he sought information about these cars from appellant and her sister, who told him that he need not look for the cars as the chattel mortgages involved were fictitious papers prepared by them under the direction of Simmons; that after a further conference with the bank's attorney, he went again to see appellant and her sister, taking with him about one hundred and fifty notes and mortgages; that on this visit appellant and her sister went through all of these mortgages and separated those that were fictitious from those that were genuine; and that after the result of this second visit was reported to the bank's attorney, the claim and delivery proceedings were abandoned.

In April, 1945, about four or five months after the claim and delivery proceedings were discontinued, warrants were signed by the cashier of the bank charging Simmons, appellant and her sister with forgery. Appellant and her sister were detained in the county jail for several hours while arranging bond. Several weeks later, additional warrants charging forgery were issued against the parties but no formal arrest was necessary as bonds were promptly furnished. A preliminary hearing was demanded and held, at which the magistrate refused to dismiss the charges. At the September, 1945, term of the Court of General Sessions of Laurens County, indictments based on the warrants above mentioned were handed to the grand jury and true bills returned on all of them. A trial was had at that term of court on several of the indictments. The jury returned a verdict of guilty as to Simmons and a verdict of not guilty as to appellant and her sister. On appeal to this Court, the conviction of Simmons was reversed and a new trial ordered upon the grounds that the Court erred in the exclusion of

certain testimony and made improper comments in the presence of the jury. *State v. Simmons,* 209 S. C. 531, 41 S. E. (2d) 217. As shown in that opinion, the defense of Simmons was that he directed the fabrication of these mortgages under instructions from W. J. Bailey for whose benefit, he contended, the business was conducted. The opinion further shows that Bailey specifically denied giving such instructions and disclaimed any knowledge of the fictitious character of the papers until that fact was discovered by the bank after the papers were in default.

At the September, 1947, term of court, Simmons, appellant and her sister were again tried on other indictments growing out of the fabrication of these papers. Upon the conclusion of the testimony, the presiding Judge directed a verdict of not guilty as to appellant and her sister and the jury returned a verdict of acquittal as to Simmons. At both the trials and on appeal to this Court, counsel employed by the bank assisted in the prosecution.

Shortly thereafter this action was commenced against W. J. Bailey individually, and the partnership of M. S. Bailey & Son, Bankers. While it was pending, both W. J. Bailey and H. W. Simmons died. Appellant made a motion to make the personal representatives of W. J. Bailey parties defendant. This motion was refused and the action was continued against the surviving partners of the banking institution.

On the trial of the case now before us, appellant's sister, who also has a suit pending for malicious prosecution against respondents, assumed full responsibility for preparing most of the fictitious papers and signing the names purporting to be those of the makers. Appellant claimed that her part in these transactions consisted solely in witnessing the false signatures and signing the probating affidavits. Both admitted knowing that these alleged mortgages were pure fabrications. They asserted, however, that they did not become aware of the illegal or wrongful character of their acts until called upon by the Sheriff after the claim and delivery pro-

ceedings were instituted, and sought to excuse their conduct by saying their part in these spurious transactions was done at the direction of Simmons without any benefit whatsoever accruing to them. Appellant's counsel also sought to elicit from them an alleged statement by Simmons to the effect that these papers were being made up at the request of W. J. Bailey, but the Court excluded this testimony as hearsay. Both appellant and her sister admitted that the question of fabricating these papers was never discussed with either W. J. Bailey or any other member of the banking partnership.

Having stated somewhere at length the facts and circumstances leading up to the prosecution complained of, we shall now seek to determine whether they tend to show a want of probable cause for the charge of forgery preferred against appellant by the bank. "Probable cause means the existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of crime for which he was prosecuted." *China v. Seaboard Air Line Railway Co.*, 107 S. C. 179, 92 S. E. 335, 337. "In determining whether there was probable cause for instituting a criminal prosecution, only those facts and circumstances which were, or should have been, known to the prosecutor at the time he instituted the prosecution should be considered." 54 C. J. S., Malicious Prosecution, § 30(c), p. 991. Ordinarily the existence of probable cause is a question to be decided by the jury. *Caldwell v. Bennett*, 22 S. C. 1. But where "all the facts proved by the plaintiff are assumed to be true, and still they do not make out what in law constitutes proof of absence of probable cause, it follows there is nothing to go to the jury." *Ford v. Kelsey & Deas*, 4 Rich. 365. Non-suits have been consistently sustained where there was no testimony tending to show want of probable cause for the prosecution. *Stoddard v. Roland*, 31 S. C. 342, 9 S. E. 1027; *Smith v. Hughes*, 104 S. C. 149, 88 S. E. 369. While malice may

be inferred from a want of probable cause, it is well settled that a want of probable cause cannot be inferred from any degree of malice. *Stoddard v. Roland, supra.* ·

Section 1211 of the Code provides that "whoever shall be convicted of falsely making, forging, or counterfeiting * * * or of willfully acting or assisting in the false making, forging or counterfeiting of any writing or instrument of writing, or of uttering or publishing as true any false, forged, or counterfeited writing or instruments of writing, * * * with an intention to defraud any person, shall be guilty of forgery." Both under this statute and the common law a person may commit forgery by being present, and knowingly aiding and abetting another in the perpetration of the crime. Annotation L. R. A. 1916-F., page 1254. While fraudulent intent is of the essence of the crime, such intent need not look to the personal advantage of the person charged. It is not essential to show that he profited or intended to profit by the forgery. *People v. Esrig et al.,* 240 App. Div. 300, 270 N. Y. S. 372. It has been held that if one attests a note as a witness, knowing that the maker's name has been forged to it, for the purpose of giving validity to the note as a binding obligation or with the intent to injure or defraud the maker, he is guilty of forgery. *Shelton v. State,* 143 Ala. 98, 39 So. 377. ·

When the foregoing principles are applied to the admitted facts of the instant case, the conclusion is inescapable that the testimony fails to show lack of probable cause for the prosecution. Appellant admits that she knowingly assisted in the preparation of these fabricated papers. She undertook to witness signatures known by her to be fictitious and falsely swore in the probating affidavits that she saw the makers sign the mortgages. She knew these papers were being passed to the bank as bona fide liens. The only essential element of forgery which she denies is an intent to defraud. But unless the bank had knowledge of other circumstances tending to exonerate appellant, it was reason-

ably warranted in inferring a fraudulent intent from her admitted acts. It must be remembered that the issue before us is not whether appellant is guilty or innocent. The inquiry is solely whether there was probable cause for prosecution. She does not claim her part in the transaction was done under compulsion or duress. This being true, if she knowingly assisted in the commission of a forgery, it would be no defense that she acted under the instructions of her employer. *Commonwealth v. Peakes,* 231 Mass. 449, 121 N. E. 420; 22 C. J. S., Criminal Law, § 44, page 99. The testimony admitted fails to show knowledge by Bailey or any of the other partners of the banking institution of the fictitious character of these papers when they were received at the bank and credited on Simmons' account. It is conceded that the bank's cashier who signed the warrants had no such knowledge.

It is true that appellant and her sister testified that Watson, who they said was either a teller or bookkeeper at the bank, frequently came to Simmons' office to get the mortgages which the bank was handling and was present when some of the fabricated papers were being prepared. They said that he jokingly remarked to Mrs. Bryson on one occasion that "there was no way she could ever tell her own handwriting if she wrote it right." Both admitted, however, that they never discussed the question of the fabrication of these papers with Watson. If he acquired any information about their fictitious character, there is no showing that he ever communicated same to the cashier of the bank or to any of the partners. Apparently he was a mere clerical employee of the bank. It is not shown that he had authority to discount papers or to otherwise act for the bank in these transactions. Under these circumstances, we do not think any knowledge acquired by him would be imputed to the bank. *Knobelock v. Germania Savings Bank,* 50 S. C. 259, 27 S. E. 962; *Hill v. Carolina Power & Light Co. et al.,* 204 S. C. 83, 28 S. E. (2d) 545. Appellant and her sister also testified that bills for cloth sold above ceiling

prices were made in the name of the S & W Commission Company, which they said was composed of Simmons and Watson. Any interest which Watson had in Simmons' business by reason of this connection was wholly foreign to the discharge of his duties as an employee of the bank.

It is contended that even if Bailey did not authorize Simmons to make up these fictitious mortgages and place them in the bank, the previous transactions and dealings between them and between Simmons and the bank were such as to cause appellant and her sister to believe that Bailey had authorized Simmons to do so. Our attention is called to appellant's testimony to the effect that under instructions from W. J. Bailey and for his benefit, Simmons bought savings bonds and "looneys" at a discount, lent money at usurious rates, and sold cloth at illegal prices, all of which, it is said, was known to appellant. From this testimony it is argued that appellant and her sister were accustomed to handling illegal transactions for Bailey and Simmons and, therefore, had a right to assume that Bailey authorized the preparation of the fictitious papers. The question of the actual belief entertained by appellant was a vital issue in the criminal case but the issue here is what the bank had reasonable cause to believe as to her intent. There is no testimony whatsoever tending to show that the bank had any part in the above mentioned transactions or that any benefit therefrom accrued to the bank. It is true that we held on the appeal by Simmons from his conviction that the testimony now relied on was relevant to Simmons' defense that he was acting as a mere agent of Bailey and under his instructions. After observing that a co-partner cannot be convicted of defrauding the partnership, the Court said in State v. Simmons [209 S. C. 531, 41 S. E. (2d) 219] : "If the appellant (Simmons) was acting merely as the agent of W. J. Bailey, and under his instructions, and if a conviction against Bailey could not be had, then a conviction of appellent is improper." But the distinction here is that we do not have before us Simmons' testimony as to the instructions

given him by Bailey and the question on this appeal is not what appellant may show in defense of the criminal charge but what the bank had reasonable cause to believe as to her guilt at the time the prosecution was instituted.

Finally, it is suggested that want of probable cause █ may be inferred from the fact that after appellant and her sister were acquitted by the jury on the first trial, counsel employed by the bank continued to assist in the prosecution and actively participated in the trial of the second case which was based on other indictments growing out of the same transaction. We do not think so. The record does not disclose that any facts or circumstances were developed at the first trial that were not known at the time the initial prosecution was commenced. Appellant's contention throughout has been that she had no intent to defraud the bank and acted solely under the instructions of her employer. Moreover, the question of whether appellant should be tried the second time was one addressed solely to the Solicitor.

Having concluded that the non-suit was properly ordered on the testimony admitted, we now turn to the question of whether certain additional testimony offered by appellant was properly excluded.

Appellant offered in evidence the transcript of testimony given by H. W. Simmons on the second criminal trial held in September, 1947. We do not have that testimony before us but it seems to be conceded that Simmons testified at both of the criminal trials that his business was operated for the benefit of W. J. Bailey who, he said, instructed him to prepare and place in the bank the fictitious mortgages for the purpose of satisfying the bank examiners. As previously stated, Simmons died during the pendency of the instant action.

The general rule is that evidence given on a former ██ ██ trial of the same action, or a former action involving the same issues between the same parties or their

privies, is admissible, if the witness is dead. *Fellers v. Davis,* 22 S. C. 425; *Nock v. Fidelity & Deposit Co. of Maryland,* 175 S. C. 188, 178 S. E. 839, 98 A. L. R. 757; *McInturff et al. v. Insurance Company of North America,* 248 Ill. 92, 93 N. E. 369, 140 Am. St. Rep. 153, 21 Ann. Cas. 176. According to the weight of authority, the testimony given at a criminal trial by a witness since deceased is not admissible in a subsequent civil action, although involving the same transaction, against a person who was not a defendant in the criminal case, there being no identity of parties and issues. 20 Am. Jur., page 586; Annotation 46 A. L. R., page 463.

It would appear from these authorities that the testimony under consideration is inadmissible. Respondents were not parties to the criminal proceedings. The Solicitor was in charge of the prosecution and could direct it as he saw fit. It is true that counsel employed by the bank were present but the extent of their participation was wholly a matter in the discretion of the Solicitor. They had no inherent right to take part in the trial.

Appellant's counsel assert that a different rule applies in actions for malicious prosecution. It is true that it has been held in some jurisdictions that upon the issue of probable cause, it is competent for either party to offer the testimony given at the previous trial, even though the witnesses who gave such testimony are available. *Kansas & Texas Coal Co. et al. v. Galloway,* 71 Ark. 351, 74 S. W. 521, 100 Am. St. Rep. 79. Upon this question the authorities are divided. 34 Am. Jur., page 779, 54 C. J. S., Malicious Prosecution, § 89(f), page 1068. In *McCall v. Alexander,* 84 S. C. 187, 65 S. E. 1021, which involved an action for malicious prosecution growing out of a charge of disposing of property under lien, the defendant offered the testimony taken by the magistrate on the preliminary hearing, as evidence tending to show probable cause. It was held that this testimony was properly excluded because it did not appear

that the witness whose testimony was offered was inaccessible. Also, see *Jackson v. Brady*, 140 La. 746, 73 So. 850.

Without undertaking to pass upon the soundness of the rule advanced by appellant, we do not think it applies to the situation before us. The testimony sought to be introduced was not offered by the prosecution during the criminal trial but was given by Simmons in his own defense. In all of the cases which we have examined sustaining the theory advanced by appellant, the testimony admitted consisted of that given at a preliminary hearing or that offered by the prosecution in the trial of the criminal case and was received for the purpose of showing whether the facts known to the prosecutor were sufficient to constitute a probable cause for the prosecution. The testimony in question does not come within that category. If Simmons' testimony is admissible, that given at the criminal trial by the late W. J. Bailey would also be admissible and perhaps all the other testimony offered at that trial. This would result in trying again the issue of the guilt or innocence of appellant which has already been determined in her favor. The sole question here is whether there was probable cause for the prosecution.

We next consider whether the Court below erred in excluding a part of the conversation which the Sheriff had with appellant and her sister when he called upon them for the purpose of seeking information as to the cars described in the claim and delivery papers. He was permitted to testify without objection from respondents that appellant and her sister stated to him that Simmons told them to make up these mortgages. It was then sought to further elicit from the Sheriff that appellant and her sister also said in the same conversation that Simmons told them that Bailey had instructed him to have these fictitious mortgages prepared. The latter statement was excluded by the Court as hearsay. It is true that it is ordinarily permissible to show any facts made known to the prosecutor tending to exonerate the accused, but these facts may not be proved by hearsay evidence which undoubtedly the excluded statement was.

It is argued, however, that where the question is whether a party has acted in good faith, the information on which he acted, whether true or false, is original and material evidence and not hearsay. Appellant's counsel asserts in their brief that they were "not attempting to prove the truth of the statement but only attempting to prove that the statement was made and given as the reason why the act was done." In a trial of appellant for the crime of forgery, the testimony offered might have been competent as bearing on the question of whether she acted in good faith and with no intent to defraud. But on the question of whether the bank had probable cause for the prosecution, it would be of no value unless assertive or testimonial use is made of it. Obviously, the self-serving declaration of Simmons as to what Bailey told him was offered for the purpose of showing that the bank through Bailey had at all times knowledge of the fictitious character of these mortgages and, therefore, commenced the prosecution without reasonable ground for believing that appellant was guilty. Such facts cannot be proved by hearsay testimony. We have just held that Simmons' testimony given at the criminal trial was inadmissible. Here it is sought to prove the same facts by hearsay. The ruling of the trial Judge was correct. We intimate no opinion upon the disputed question as to whether at the time this alleged conversation took place, the Sheriff could properly be regarded as an agent of the bank.

There is another ground upon which the non-suit must be sustained. Appellant seeks to show by the excluded testimony that Bailey authorized the making of the fictitious papers from which it is argued that information possessed by Bailey would be imputed to the bank. If so, there was a conspiracy on the part of W. J. Bailey to defraud the bank of which he was the managing partner. He is now dead and appellant's cause of action did not survive against his estate. Any liability on the part of the surviving partners, who are conceded to be innocent of any participation in these transactions, must be based on the prin-

ciple that each partner is the agent of the firm while engaged in the prosecution of the partnership business, and that the firm is liable for the torts of each if committed within the scope of his agency. *Hyrne v. Erwin,* 23 S. C. 226, 55 Am. Rep. 15. If Bailey authorized the preparation of these fictitious papers for the purpose of defrauding the bank and using the funds thus obtained to finance the business in which appellant claims he was engaged, he was not acting within the scope of the partnership business. The general rule that knowledge of an agent acquired in the course of his agency is chargeable to his principal does not apply where the knowledge was obtained by the agent while engaged in the perpetration of a fraud on his principal. *Bacot v. South Carolina Loan & Trust Co.,* 132 S. C. 340, 127 S. E. 562; *Eskew v. Life Insurance Company of Virginia,* 190 S. C. 515, 3 S. E. (2d) 251. In this connection, see *Reynolds v. Prudential Insurance Company of America,* 181 Minn. 52, 231 N. W. 615, which involved an action for malicious prosecution. Under the circumstances sought to be proved by appellant, Bailey's knowledge would not be chargeable to the other partners or to Adair, the cashier of the bank, who signed the warrants.

Errors are also assigned in the exclusion of certain other testimony. We need not pass upon its admissibility, however, since it could not affect the question of whether the non-suit was properly granted. In other words, the testimony mentioned in these exceptions, if considered, would not change the conclusion we have reached.

Judgment affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.