692 S.E.2d 895

**The STATE, Respondent/Petitioner,**

v.

**Rebecca LEE–GRIGG, Petitioner/Respondent.**

**No. 26803.**

Supreme Court of South Carolina.

Heard Oct. 21, 2009.

Decided April 12, 2010.

Rehearing Denied May 26, 2010.

---

312

C. Rauch Wise, of Greenwood, for Petitioner/Respondent.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Special Assistant Attorney General Amie L. Clifford, all of Columbia, and Solicitor Jerry W. Peace, of Greenwood, for Respondent/Petitioner.

Justice PLEICONES.

We granted cross-petitions for writs of certiorari to review a Court of Appeals decision which granted petitioner/respondent (Lee–Grigg) a new trial. *State v. Lee–Grigg,* 374 S.C. 388, 649 S.E.2d 41 (Ct.App.2007). We affirm the decision to grant a new trial.

## *FACTS*[1]

Lee–Grigg was the executive director of a shelter for abused women. In 2003, a woman was brought to the shelter by police officers; due to special circumstances, it was decided that the woman should be relocated and her identity changed to protect her from further abuse.

---

1. A fuller version of the facts can be found in the Court of Appeals opinion.

In an attempt to secure funds for the victim relocation, Lee–Grigg contacted the South Carolina Victim Assistance Network (SCVAN). After discussions with various employees of SCVAN, the executive director promised to reimburse Lee–Grigg for mileage and a hotel room for the victim. Lee–Grigg also contacted the Greenwood South Carolina Chief of Police (Chief Brooks) and asked whether his department could help finance the victim's relocation. Chief Brooks told Lee–Grigg that he would provide a driver, car, and fuel for the victim's relocation. Chief Brooks also said that he or the city could pay for the victim's and driver's expenses on the trip, but not costs incurred by Lee–Grigg.

Prior to relocating the victim, Lee–Grigg completed all the paperwork necessary to apply for reimbursement from SCVAN. The application was approved. Lee–Grigg never told anyone with SCVAN that she and the victim would be accompanied by another individual or aided financially by another entity.

Greenwood provided a driver and gave the driver $150 in cash and a gas credit card. During the trip, Lee–Grigg paid for the meals she and the victim ate, while the driver paid for her own food. After dropping the victim off at a shelter in another state, the driver and Lee–Grigg checked into a hotel where they shared a room. The driver paid for the room out of the cash advance she received from the city.

After returning to Greenwood, the driver applied to the city for reimbursement of her expenses. Attached to her application were the receipts from the trip. Pursuant to city policy, the driver and Chief Brooks signed the receipts. After receiving a reimbursement check in the amount of $159.56, the driver repaid the city $150.00 for the cash advance she received prior to the trip.

Both during the trip and after her return, Lee–Grigg gathered information necessary to apply to SCVAN for reimbursement of the funds actually expended by the city. For instance, at the outset of the trip, Lee–Grigg asked the driver for the vehicle's mileage. Soon after returning to Greenwood, Lee–Grigg contacted the driver and asked for the mileage on the vehicle as it appeared upon their return. Additionally,

Lee–Grigg had a shelter employee call the city and get copies of the receipts from the trip.

Lee–Grigg completed a reimbursement form and submitted it to SCVAN. The reimbursement form indicated the dates of the trip, the origination and destination of the trip, beginning and ending odometer readings on the city's vehicle, and the total mileage driven. Lee–Grigg also attached copies of the receipts she received from the city, including receipts for meals, fuel, and the hotel stay. Lee–Grigg altered the copies of the receipts so as to remove the signatures and initials of the driver and Chief Brooks. The city also applied to SCVAN for reimbursement of the same expenses and submitted the same documentation, absent the alterations to the receipts made by Lee–Grigg.

After receiving duplicate reimbursement forms from the shelter and the city, SCVAN contacted the shelter's board of directors. After a short investigation, the board of directors found that Lee–Grigg did not commit any wrongdoing.

The South Carolina Department of Public Safety, which oversees the disbursement of funds from SCVAN, notified the State Law Enforcement Division (SLED) of the duplicate reimbursement requests. During the course of SLED's investigation, Lee–Grigg maintained that she and Chief Brooks agreed she would apply to SCVAN for reimbursement of the expenses actually incurred by the city. Additionally, Lee–Grigg claimed that she removed the initials and signatures of the driver and Chief Brooks so as to keep secret the new location of the victim. We note that Lee–Grigg did not delete or otherwise obscure the addresses of the establishments from which the receipts were received.

The travel reimbursement form signed by Lee–Grigg and submitted to SCVAN contained the following statement:

> I hereby certify or affirm that the above expenses were actually incurred by me as necessary traveling expenses in the performance of my official duties.

Lee–Grigg was indicted and tried for the offense of forgery.

At trial, Lee–Grigg's defense was that she lacked the requisite criminal intent to commit forgery because she had a good-faith belief that she was authorized by Chief Brooks to apply

for the reimbursement. In support of this defense, Lee–Grigg presented evidence of her good character.

While Lee–Grigg testified that Chief Brooks authorized her to apply for reimbursement of the city's expenses, Chief Brooks testified that he only intended to provide limited assistance to Lee–Grigg and did not authorize her to apply to SCVAN for reimbursement of the city's expenses. Thus Lee–Grigg's state of mind and understanding of the agreement with Chief Brooks was in issue. As it concerned her good character, Lee–Grigg presented several witnesses who testified that she had a reputation for honesty. A state elected official testified that he knew and trusted Lee–Grigg, and three members of the shelter's board of directors and one of its employees testified that Lee–Grigg was an excellent executive director, and a person of great integrity and honesty.

Lee–Grigg's counsel submitted several requests to charge. Among these requests was one to the effect that there is a good faith defense to the crime of forgery, and another would have instructed the jury that it could consider evidence of Lee–Grigg's good character when deciding whether she possessed the requisite criminal intent to commit the crime of forgery. The trial judge declined to give the jury either of these two charges.

The case was submitted to the jury. After a little more than an hour of deliberation, the jurors asked the judge to reinstruct them on the definition of "intent." Approximately twenty minutes after receiving the judge's supplemental instruction, the jury informed the judge that they were deadlocked. With the consent of the parties, the judge issued an *Allen* charge and approximately forty-five minutes later, the jury returned a guilty verdict. Lee–Grigg was sentenced to two years, suspended with probation for one year.

On appeal, the Court of Appeals affirmed the trial court's decision not to charge the jury on a good-faith defense, but reversed Lee–Grigg's conviction, finding that the trial court erred in refusing to charge the jury on its use of character evidence and that this error was not harmless. We granted Lee–Grigg's petition to review the good-faith defense issue and the State's petition to review the good character issue.

316

## ISSUES

1. Did the Court of Appeals err when it affirmed the trial court's decision not to charge the jury on a good-faith defense to the crime of forgery?
2. Did the Court of Appeals err when it reversed the trial court's decision not to charge the jury as to its use of character evidence?

## ANALYSIS

### A. *Jury Charge Concerning Good–Faith Defense*

██ Lee–Grigg argues that the Court of Appeals erred in affirming the trial court's decision not to instruct the jury on a good-faith defense to the crime of forgery. We find the omission of this charge harmless here.

██ Lee–Grigg's intent in submitting the reimbursement form was at issue here, and under South Carolina law, "good faith" can be defense to a criminal forgery charge. *See Brown v. Bailey*, 215 S.C. 175, 191, 54 S.E.2d 769, 776 (1949).[2] We find no reversible error in the trial court's decision to decline Lee–Grigg's requested charge, however, because as the Court of Appeals held, the charge given here adequately conveyed to the jury the *mens rea* necessary for a forgery conviction. *State v. Lee–Grigg*, 374 S.C. at 407–409, 649 S.E.2d at 51.

### B. *Jury Charge Concerning Good Character*

██ The State argues that the trial court's failure to charge the jury on its consideration of character evidence was harm-

---

2. The dissent characterizes the reference to a "good faith" defense in *Brown* as made "hypothetically in dicta." While it may have been hypothetical, it is not dicta. *Brown* was a malicious prosecution case against a bank which had instigated forgery charges against Brown. At the criminal trial, Brown had admitted knowingly fabricating notes and mortgages and witnessing/probating forged signatures on these documents. Her defense to the criminal charge was that she acted without any fraudulent intent, that is, in good faith. Brown was acquitted by a jury in her first criminal trial and the judge directed a verdict in her favor at the second trial. This malicious prosecution suit followed. The reference to the good faith defense in *Brown* is made during the Court's discussion of the relevancy and admissibility of certain hearsay evidence, the holding being that while the disputed evidence might have been competent to prove the good faith defense at the criminal trial, it was not admissible in this malicious prosecution suit.

less, and the Court of Appeals erred by declining to make such a finding. We disagree.

It is well settled that a criminal defendant may introduce evidence of his good character. Rule 404(a)(1); Rule 405, SCRE; *see also State v. Lyles*, 210 S.C. 87, 92, 41 S.E.2d 625, 627 (1947). Furthermore,

> where requested and there is evidence of good character, a defendant is entitled to an instruction to the effect that evidence of good character and good reputation may in and of itself create a doubt as to guilt and should be considered by the jury, along with all the other evidence, in determining the guilt or innocence of the defendant.

*State v. Green*, 278 S.C. 239, 240, 294 S.E.2d 335, 335 (1982). Because Lee–Grigg presented evidence of good character and requested that the jury be charged on its use of that evidence, the trial court erred when it refused to give such a charge. The State concedes this point but argues that the error was harmless because the evidence presented at trial conclusively established Lee–Grigg's guilt. We disagree.

Here, the dispositive issue presented by the defense was whether Lee–Grigg believed in good faith that she was authorized to apply for reimbursement. The jurors' request for a recharge on the definition of "intent" is evidence that they were struggling with this question. Character evidence of Lee–Grigg's reputation for honesty and trustworthiness was admitted, but without an instruction the jury was not aware that it could consider this evidence in determining her credibility and her culpability. We agree with the Court of Appeals that this error cannot be deemed harmless.

## CONCLUSION

The decision of the Court of Appeals granting Lee–Grigg a new trial is

**AFFIRMED.**

WALLER and BEATTY, JJ., concur.

TOAL, C.J., concurring in part and dissenting in part in a separate opinion in which Acting Justice JAMES E. MOORE, concurs.

Chief Justice TOAL, concurring in part and dissenting in part.

I respectfully concur in result in part and dissent in part from the majority's opinion. First, I concur in result with Part A of the majority's opinion, which concerns the issue of a good-faith defense to forgery. Nonetheless, I disagree with the majority's reasoning as it concerns this issue. Second, in my opinion, the court of appeals erred when it reversed the trial court's decision not to charge the jury as to its use of character evidence. Thus, I dissent as to Part B 'of the majority's opinion.

### A. Jury Charge Concerning Good–Faith Defense

In my view, the court of appeals did not err when it affirmed the trial court's refusal to charge the jury as to a "good-faith" defense to forgery. The majority, however, finds that the trial court erred in this respect but concluded, nonetheless, that the error was harmless. In my view, there is no "good-faith" defense to forgery in South Carolina [3] and I would affirm the court of appeals on this ground, stopping short of applying a harmless error analysis. Therefore, although I concur in result as to this issue, I disagree with the majority's reasoning.

### B. Jury Charge Concerning Good Character

Second, in my view, the court of appeals erred when it did not recognize as harmless the trial court's failure to charge the jury as to Lee–Grigg's good character.

The State concedes that it was error not to charge the jury as to Lee–Grigg's character, but argues that the error was harmless because the evidence presented at trial conclusively established Lee–Grigg's guilt. I agree.

---

**3.** Relying upon this Court's opinion in *Brown v. Bailey*, 215 S.C. 175, 54 S.E.2d 769 (1949), the majority concludes that "good-faith" is a defense to forgery in South Carolina. However, *Brown* does not recognize a good-faith defense to forgery, merely referencing the concept hypothetically in dicta. 215 S.C. at 191, 54 S.E.2d at 776.

To warrant reversal, a trial judge's failure to give a requested jury instruction must be both erroneous and prejudicial. *State v. Hughey,* 339 S.C. 439, 450, 529 S.E.2d 721, 727 (2000). As the court of appeals correctly noted, a trial court's failure to instruct a jury is subject to "harmless error" analysis. *State v. Lee–Grigg,* 374 S.C. 388, 411, 649 S.E.2d 41, 53 (Ct.App.2007); *see State v. Jefferies,* 316 S.C. 13, 21, 446 S.E.2d 427, 431 (1994) (noting that the harmless error analysis is appropriate where the error complained of is a "trial error" rather than a "structural defect" in the trial mechanism itself). Whether an error is harmless depends on the circumstances of the case. *State v. Reeves,* 301 S.C. 191, 193, 391 S.E.2d 241, 243 (1990). The materiality and prejudicial character of the error must be determined from its relationship to the entire case. *Id.* An error not affecting the result of the trial is harmless where "guilt has been conclusively proven by competent evidence such that no other rational conclusions can be reached." *State v. Pagan,* 369 S.C. 201, 212, 631 S.E.2d 262, 267 (2006).

In my view, the evidence presented at trial conclusively proved that Lee–Grigg was guilty of the crime of forgery. Forgery involves the false making or material alteration, with the intent to defraud, prejudice, or damage another, of an instrument which serves as the foundation for legal liability. *State v. Walton,* 107 S.C. 353, 356, 93 S.E. 5, 6 (1917). The State presented overwhelming evidence of Lee–Grigg's guilt. The jury considered uncontroverted evidence that Lee–Grigg applied to SCVAN to obtain reimbursement for expenses she admittedly did not incur. At no time did Lee–Grigg attempt to say that she incurred the expenses for which she sought reimbursement. Furthermore, the evidence presented at trial conclusively established that Lee–Grigg altered the city's receipts that she used to support her application for reimbursement. In short, Lee–Grigg admitted at trial that even though she represented to SCVAN that she incurred the expenses for which she sought reimbursement, they were actually incurred by the city. Additionally, Lee–Grigg admitted at trial that she was aware that the reimbursement application form submitted to SCVAN misrepresented, concealed, or otherwise communicated false information.

In determining that the error was not harmless, the court of appeals was persuaded by the details of the jury's deliberation, specifically its request for an instruction as to the definition of criminal intent. I view this analysis of the relationship between criminal intent and good character as simply another way of asserting a "good faith" defense to forgery. The fact that Lee–Grigg's forgery was motivated by a desire to help her non-profit organization does not impact the analysis of whether she intended to commit this crime.

In my view, the uncontroverted evidence presented at trial conclusively established that Lee–Grigg knowingly made specific misrepresentations in her application for reimbursement from SCVAN and supported those misrepresentations by altering the city's documentation and claiming it as her own. Lee–Grigg admitted these facts at trial. Even if the jury were instructed on its use of character evidence, given the uncontroverted evidence presented at trial, the jury could only have reached one logical conclusion—that Lee–Grigg was guilty of forgery. Thus, I would find that the failure to charge the jury on its use of character evidence was harmless error and the court of appeals should be reversed on this issue.

Acting Justice JAMES E. MOORE, concurs.