**THE STATE OF SOUTH CAROLINA**
**In The Supreme Court**

Vladimir W. Pantovich, Respondent,

v.

State of South Carolina, Petitioner.

Appellate Case No. 2017-000280

---

## ON WRIT OF CERTIORARI

---

Appeal from Georgetown County
George C. James, Jr., Circuit Court Judge

---

Opinion No. 27915
Heard March 27, 2019 – Filed August 7, 2019

---

## AFFIRMED

---

Attorney General Alan McCrory Wilson and Assistant
Attorney General Johnny Ellis James, Jr., both of
Columbia, for Petitioner.

Appellate Defender David Alexander, of Columbia, for
Respondent.

---

**JUSTICE HEARN**: In this post-conviction relief (PCR) matter, we examine South
Carolina's longstanding good character charge as we determine whether the PCR
court erred when it found appellate counsel for Respondent Vladimir Pantovich
ineffective for failing to raise a meritorious issue on direct appeal. The PCR court

granted relief based on appellate counsel's failure to argue that the trial court erred by refusing to give such a charge, which counsel had requested at trial. While we agree that a portion of the charge Pantovich requested is improper, we nonetheless affirm because of the retrospective nature of PCR review.

## FACTUAL AND PROCEDURAL BACKGROUND

Pantovich killed his former girlfriend, Sheila McPherson, with a baseball bat during an argument in his home. He hit her with the bat more than ten times, breaking ribs, damaging internal organs, and causing lacerations on her head that exposed her bare skull. Pantovich wrapped her dead body in a blanket, tied it with a rope, obscured her head with a garbage bag, and put the body and the bat in the trunk of his car. He then left his home in Georgetown County and drove toward his son's home in Taylorsville, North Carolina. On the way, he called his son to reveal what he had done. The son alerted law enforcement, and an officer stopped Pantovich as he approached Taylorsville. McPherson's body was still in the trunk in the same condition.

The State charged Pantovich with murder. At trial in 2008, he admitted he beat McPherson to death, but claimed he did so in self-defense. Pantovich explained McPherson physically abused him throughout their years-long relationship. Four days before he killed her, he and McPherson got into an argument and she left him. Two days later, Pantovich talked to her on the phone and told her he no longer wished to see her. He testified that on the evening of the killing, he came home from work around 6:00 p.m. to find McPherson in his house. She had drugs in her possession, and the toxicology report later showed she had several in her system. Pantovich told her to leave, but McPherson refused and unplugged the phone so he could not call the police. Thereafter, McPherson grabbed a fireplace poker and stabbed a hole in Pantovich's dinner tray while he sat in a reclining chair eating. McPherson then attacked him with the poker. Pantovich stated he was scared and tried to protect himself, so he backed toward the door to his garage and grabbed one of two baseball bats he kept there. He recalled blocking McPherson with one hand and using the other to hit her with the bat.

After Pantovich testified, he presented five character witnesses: Andy Seifert, a friend and former employer; Christine McCune, a friend of more than ten years; Maureen Moans, a friend of almost ten years; Debbie Crisman, Pantovich's ex-girlfriend; and Tammy Eschman, his former next-door neighbor. They generally testified he was kind, caring, and good with children. Several also reported

witnessing McPherson act violently towards Pantovich, but they never saw him react in kind.

Pantovich submitted a written request for the trial court to charge the jury as to how it may interpret and use evidence of his good character. The written charge request stated:

> An accused, when charged with a crime, has the right of proving his general good character.  He may introduce evidence of his good character which is inconsistent with the crime charged against him.

> Evidence of the general good character of the accused is for the purpose of showing the improbability that the defendant would have committed the crime charged.  The good character of the accused is like all other evidence in the case and is entitled to such effect and weight as you, the jury, may determine.

> Good character evidence alone may create a reasonable doubt as to the commission of the crime charged.[1]  Thus, under some circumstances, a person might be entitled to a verdict of not guilty when his good reputation is taken into consideration even though a verdict of guilty might be authorized without the evidence of good character.

In response, the State requested a "more balanced" charge that would allow the jury to decide whether evidence constituted good character.  After all evidence had been presented, the trial court provided a copy of its proposed jury charge, which made no mention whatsoever of good character.  Pantovich reiterated his request, but the trial court denied it.  The jury found him guilty of the lesser-included offense of voluntary manslaughter, and the trial court sentenced him to eighteen years in prison.

Appellate counsel filed a brief with the court of appeals pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Williams*, 305 S.C. 116, 406 S.E.2d 357 (1991).  Appellate counsel did not mention the trial court's denial of Pantovich's request to charge the jury on good character.  The court of appeals dismissed the appeal.  *State v. Pantovich*, Op. No. 2011-UP-275 (S.C. Ct. App. filed June 8, 2011).

Pantovich subsequently filed this PCR action alleging appellate counsel was ineffective for failing to brief the trial court's refusal to give the requested jury

---

[1] We refer to this portion of the instruction as the "good character alone" charge.

charge. The PCR court initially found Pantovich failed to prove prejudice because he alleged no irregularity in the court of appeals' *Anders* procedure. We reversed, finding that to demonstrate prejudice "the applicant must show . . . but for appellate counsel's errors, the result of the appeal would have been different." *Pantovich v. State*, Op. No. 2015-MO-052 (S.C. Sup. Ct. filed Aug. 26, 2015).

On remand, the PCR court found appellate counsel ineffective and granted Pantovich a new trial. The court found that, because Pantovich presented evidence of his good character, controlling precedent required the trial court to give the "good character alone" charge to the jury. The PCR court determined the error prejudiced Pantovich because there was a reasonable probability the charge would have impacted the jury's consideration of whether he was without fault in bringing on the difficulty and rejected the State's arguments regarding harmless error. We granted the State's petition for a writ of certiorari.

## STANDARD OF REVIEW

This Court affords deference to a PCR court's findings of fact, but reviews questions of law de novo. *Smalls v. State*, 422 S.C. 174, 180, 810 S.E.2d 836, 839 (2018). We will reverse if the PCR court's ruling is controlled by an error of law. *Jordan v. State*, 406 S.C. 443, 448, 752 S.E.2d 538, 540 (2013).

To prove appellate counsel was ineffective, a petitioner must first show counsel's performance was deficient, meaning it fell below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). The petitioner must then show prejudice by demonstrating that, but for counsel's deficient performance, there is a reasonable probability the result of the appeal would have been different. *Id*. at 694. A *Strickland* inquiry is retrospective, seeking to determine whether counsel was ineffective at the time of the alleged error. *Id*. at 689.

## DISCUSSION

Pantovich argues the PCR court's decision should be affirmed because the trial court was and is required to give the charge he requested when a defendant presents evidence of his good character. The State argues the "good character alone" charge is an unconstitutional comment on the facts, the charge given adequately covered the law, and any error was harmless.

The law in effect during the relevant time period—2011 and a short time thereafter—supported the PCR court's decision. In *State v. Green*, 278 S.C. 239,

294 S.E.2d 335 (1982), we stated, "[g]enerally, where requested and there is evidence of good character, a defendant is entitled to an instruction to the effect that evidence of good character and good reputation may in and of itself create a doubt as to guilt . . . ." 278 S.C. at 240, 294 S.E.2d at 335 (citing *State v. Lyles*, 210 S.C. 87, 92, 41 S.E.2d 625, 627 (1947)). In *State v. Lee-Grigg*, 387 S.C. 310, 692 S.E.2d 895 (2010), we cited *Green* and reversed the defendant's conviction, stating "the trial court erred when it refused to give such a charge." 387 S.C. at 317, 692 S.E.2d at 898. The court of appeals had also reversed a defendant's conviction based on the trial court's refusal to charge the jury that "evidence of good character . . . may in and of itself create a doubt as to the guilt that should be considered by you . . . ." *State v. Harrison*, 343 S.C. 165, 170, 539 S.E.2d 71, 73 (Ct. App. 2000).

The modern trend, however, has cast doubt upon the validity of charges instructing juries on how to interpret and use evidence. *See State v. Belcher*, 385 S.C. 597, 600, 685 S.E.2d 802, 803 (2009) (placing significant restrictions on "the [longstanding] practice for trial courts in South Carolina . . . to charge juries in any murder prosecution that the jury may infer malice from the use of a deadly weapon"). Since *Belcher*, we have found error in charging the jury that "actual knowledge of the presence of drugs is strong evidence of intent to control its disposition or use" because doing so "is improper as an expression of the judge's view of the weight of certain evidence," *State v. Cheeks*, 401 S.C. 322, 328-29, 737 S.E.2d 480, 484 (2013); we have eliminated charging the jury that a sexual assault victim's testimony need not be corroborated, *State v. Stukes*, 416 S.C. 493, 499-500, 787 S.E.2d 480, 483 (2016); we have held "the trial court shall not provide a limiting instruction or otherwise comment to the jury" on how it should interpret and use evidence of a defendant's suicide attempt, *State v. Cartwright*, 425 S.C. 81, 93, 819 S.E.2d 756, 762 (2018); and we have extended *Belcher* to eliminate from all trials any charge that the jury may infer malice from the use of a deadly weapon, *State v. Burdette*, Op. No. 27910 (S.C. Sup. Ct. filed July 31, 2019) (Shearouse Adv. Sh. No. 31 at 8).

The State asks us to hold the "good character alone" charge is similarly impermissible because it is an unconstitutional comment on the facts. While we agree that this charge is improper, we do not reverse given this case's procedural posture. Fundamentally, a collateral review proceeding is ill-suited for announcing a new rule of substantive law pertaining to an underlying trial; appellate courts are to do so only in the rarest of circumstances.[2] This is especially true in a retrospective

---

[2] *See Teague v. Lane*, 489 U.S. 288, 316 (1989) ("[H]abeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure unless those

PCR analysis under *Strickland*, which seeks to determine whether counsel was ineffective *at the time of the alleged error*. Just as we do not require attorneys to be clairvoyant in anticipating changes to the law,[3] we do not hold the PCR court erred in the face of what was—at the relevant time—clear and binding authority as expressed in *Lee-Grigg* and *Green*: a jury instruction on good character was warranted when a defendant introduced evidence thereof at trial. We cannot expect our circuit courts to divine future refinements in appellate jurisdiction—only to apply the prevailing law to the facts of a case before them.

The dissent contends, however, that the real inquiry is prejudice. We agree that there has been a trend to prohibit jury charges instructing juries on how to interpret and use evidence, beginning with *Belcher* in 2009 and developing in *Cheeks*, *Stukes*, and *Cartwright*. However, the overwhelming weight of the precedent facing the appellate court on this issue in 2011 provided that failure to give the "good character alone" charge was reversible error. We do not agree with the dissent's conclusion that Pantovich fails to show prejudice because the appellate court would have extended the *Belcher* principle to good character charges at that time, especially given that this Court had upheld the precise charge just one year earlier in *Lee-Grigg*—a post-*Belcher* decision. Likewise, we are unable to presume that a hypothetically-granted petition for certiorari in 2013 would have resulted in the opinion envisioned by the dissent, as the "trend" at that time consisted of *Belcher*, a contrary decision in an on-point case in *Lee-Grigg*, and *Cheeks*.

The dissent posits that affirmance produces a strange result: we are granting Pantovich relief, yet for all intents and purposes, the "good character alone" charge is dead in South Carolina. However, this ignores that the State actually agreed to a general charge on good character. While trial counsel requested the now-problematic "good character alone" charge, the State suggested a "more balanced charge" that would allow the jury to consider whether evidence constituted good character. Despite the State's acquiescence, the trial court did not mention good character at all in its charge, which would have made appellate counsel's chances of success on this issue even more probable. On remand, we believe Pantovich is entitled to a non-offending good character charge—for example, the first two paragraphs of the one he originally requested—if he introduces the requisite

_____

rules would be applied retroactively to *all* defendants on collateral review . . . .") (emphasis in original).

[3] *Teamer v. State*, 416 S.C. 171, 183, 786 S.E.2d 109, 115 (2016).

evidence. *See United States v. Akinsanya*, 53 F.3d 852, 856 (7th Cir. 1995) (holding that, instead of a requested "good character alone" charge, the trial court properly instructed the jury: "The defendant has introduced evidence of his character. More specifically, the defendant has introduced reputation and/or opinion evidence about his truthfulness, honesty and law-abidingness. You should consider character evidence with and in the same manner as all the other evidence in the case.").

Finally, we disagree with the State's contentions regarding the adequacy of the charge given and harmless error. The instruction included nothing regarding good character, despite the "good character alone" charge being warranted at the time of trial when a defendant produced such evidence. As to harmlessness, we agree with the PCR court that there was a reasonable probability of success on appeal because the jury could have considered evidence of Pantovich's peaceable character in deciding whether he brought on the difficulty of the incident. While the State argues a good character charge is inappropriate where a defendant admits to having killed a victim, if the defendant was acting in self-defense—and therefore, legally justified in his actions—we fail to see how a jury should be precluded from information that they can consider such evidence in deciding whether he did.

## CONCLUSION

Viewing the propriety of the PCR court's decision based on the state of the law during the relevant timeframe—not as it has evolved today—we **AFFIRM**.

**AFFIRMED**

**BEATTY, C.J., KITTREDGE, J., and Acting Justice Aphrodite K. Konduros, concur. FEW, J., dissenting in a separate opinion.**

**JUSTICE FEW:** I wholeheartedly agree with the majority's holding the "good character evidence alone" charge is improper and must never be given. I join the majority's directive that this charge must not be given in South Carolina courts in the future.

I disagree with the majority on two points. My disagreement would require us to reverse the PCR court, and thus I dissent. First, I would not remand for a new trial in which Pantovich will not get the good character evidence alone charge, the denial of which was the sole basis of the PCR court's decision. The majority makes a compelling argument the PCR court was correct under our precedent at the time the decision was made. However, it is my belief that if a direct appeal on the validity of the "good character evidence alone" charge had progressed to this Court on a petition for certiorari from the State, the case would have come to this Court during the timeframe in which the "trend" the majority acknowledges was in full swing. In my opinion, even if the court of appeals had reversed the conviction as the PCR court found reasonably likely, this Court would not have allowed that ruling to stand. I also believe remanding for a new trial—under the circumstance that Pantovich will not get on remand the charge for which he gets the remand—is, as the majority understates, "a strange result." For these two reasons, I would hold Pantovich suffered no prejudice.

Second, I do not believe a trial judge should give any guidance to a jury on how to use evidence of good character. Rather, I would hold that trial lawyers should be given the sole authority to suggest to the jury how the jury should use the evidence. I disagree with the majority's statement, "Pantovich is entitled to a non-offending good character charge—for example, the first two paragraphs of the one he originally requested." In my opinion, the trial judge correctly refused to give any of the charge Pantovich requested.

Pantovich received a fair trial, and even though the majority disagrees with me on the question of whether the trial court should give any guidance on how a jury should use evidence of good character, I would find Pantovich suffered no prejudice.

To the majority's explanation that the "good character evidence alone" charge is improper, I respectfully add these thoughts:

In *State v. Green*, 278 S.C. 239, 294 S.E.2d 335 (1982), we stated, "Generally, where requested and there is evidence of good character, a defendant is entitled to an instruction to the effect that evidence of good character and good reputation may in and of itself create a doubt as to guilt . . . ." 278 S.C. at 240, 294 S.E.2d at 335 (citing *State v. Lyles*, 210 S.C. 87, 92, 41 S.E.2d 625, 627 (1947)). We affirmed the defendant's conviction, however, because we found "the error, if any," was harmless. 278 S.C. at 240, 294 S.E.2d at 335. In *State v. Lee-Grigg*, 387 S.C. 310, 692 S.E.2d 895 (2010), we quoted the statement from *Green* and reversed the defendant's conviction, stating "the trial court erred when it refused to give such a charge." 387 S.C. at 317, 692 S.E.2d at 898. The court of appeals has also reversed a defendant's conviction based on the trial court's refusal to charge the jury that "evidence of good character . . . may in and of itself create a doubt as to the guilt that should be considered by you." *State v. Harrison*, 343 S.C. 165, 170, 539 S.E.2d 71, 73 (Ct. App. 2000).

On the face of these cases, it appears the trial court erred in this case by refusing Pantovich's requested charge, and therefore, appellate counsel's failure to brief the issue was prejudicial and deficient performance. However, upon closer examination of these cases and the line of decisions upon which they are based, I would conclude our statement in *Green* was not then and is not now a correct statement of law. In light of that conclusion, I would find Pantovich failed to prove prejudice, and the PCR court erred by granting him a new trial. *See Garren v. State*, 423 S.C. 1, 12, 813 S.E.2d 704, 710 (2018) (to obtain PCR, the applicant must prove counsel's performance was deficient, and the deficient performance prejudiced him) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984)).

The applicable line of decisions begins in 1886 with *State v. Barth*, 25 S.C. 175 (1886). In *Barth*, the trial court charged the jury that character evidence is useful "only in doubtful cases." 25 S.C. at 177. We held "it was misleading and erroneous to charge the jury . . . 'the law . . . limit[s] the effect of good character to doubtful cases.'" 25 S.C. at 181. We stated,

> it is the privilege of the accused, in all cases where character is admissible, to put in evidence his good character without regard to the other proofs in the case, and it is for the jury to consider it in connection with

the other evidence, and determine what force and
effect it should have.

25 S.C. at 177. *Barth* sets forth the rule that trial courts may not charge the
jury in such a way as to *limit* the jury's interpretation or use of evidence of the
defendant's good character. We made no suggestion in *Barth* the trial court
should charge the jury that it may use "good character evidence alone" as a
basis for finding reasonable doubt.

In 1924 in *State v. Hill*, 129 S.C. 166, 123 S.E. 817 (1924), the defendant
appealed his conviction on the ground the trial court improperly charged the
jury to limit its use of evidence of his good character. 129 S.C. at 170, 123
S.E. at 818. We found the charge did not impose such a limit. We stated,

> Evidence of the defendant's good *reputation* for peace
> and good order is strongly persuasive of his good
> *character* in that respect, and is offered for the very
> purpose stated by the Circuit Judge, to show the
> improbability that the defendant would have
> committed or did commit the crime charged.

*Id*. (citing 30 C.J. 170). We did not hold, however, this language should be
charged to the jury. There is certainly no support in *Hill* for the trial court to
charge the jury "good character evidence alone" may give rise to reasonable
doubt.

In 1947 in *Lyles*, relying on *Barth* and *Hill*, we addressed the defendant's claim
the trial court should have explained to the jury it may consider evidence of his
good character. We stated,

> There can be no doubt of the right of appellant to put
> in evidence his good character and it was "for the jury
> to consider it in connection with the other evidence,
> and determine what force and effect it should have."
> The good reputation of the accused, if proved, may be
> taken into consideration by the jury in determining
> whether or not he committed the crime charged.

*Lyles*, 210 S.C. at 92, 41 S.E.2d at 627 (first quoting *Barth*, 25 S.C. at 177; then citing *Hill*, 129 S.C. at 170, 123 S.E. at 818). Under *Lyles*—if it were not clear from *Barth* and *Hill*—it is clear a jury may consider evidence of a defendant's good character in all cases, not just "doubtful cases." However, there is nothing in *Lyles* suggesting this language should be charged to the jury. Certainly *Lyles* gives no support for a jury charge that "good character evidence alone" may give rise to reasonable doubt.

Nevertheless, in *Green* in 1982, relying on *Lyles*, this Court made the statement that "a defendant is entitled to an instruction to the effect that evidence of good character and good reputation may in and of itself create a doubt." 278 S.C. at 240, 294 S.E.2d at 335. We did not reverse the conviction, however, finding "the error, if any, could not reasonably have affected the result and is properly regarded as harmless." 278 S.C. at 240, 294 S.E.2d at 335.

The first time any South Carolina court reversed a conviction on the basis of the trial court's refusal to give the "good character evidence alone" charge was the court of appeals' decision in *Harrison* in 2000. In *Harrison*, the defendant was convicted of simple possession of cocaine. 343 S.C. at 167, 539 S.E.2d at 72. Defense counsel "argu[ed] the court failed to issue a requested charge that evidence of good character and good reputation may in and of itself create a doubt as to the defendant's guilt." 343 S.C. at 169, 539 S.E.2d at 73. The court of appeals analyzed the same line of cases we discussed above—from *Barth* to *Hill* to *Lyles* to *Green*—343 S.C. at 170-73, 539 S.E.2d at 73-75, and held "[t]he trial court erred in failing to give the requested charge." 343 S.C. at 173, 539 S.E.2d at 75.

In *Lee-Grigg*, this Court also found "the trial court erred when it refused to give such a charge," and affirmed the court of appeals' decision to grant the defendant a new trial. 387 S.C. at 317, 692 S.E.2d at 898.

In this case, our prejudice analysis should focus on whether Pantovich has proven that but for appellate counsel's deficiency, "the result of [his] appeal would have been different." *Ezell v. State*, 345 S.C. 312, 314, 548 S.E.2d 852, 853 (2001). This requires us to reconsider whether the "good character evidence alone" portion of the requested charge should ever be given to the jury. *See State v. Marin*, 404 S.C. 615, 620, 745 S.E.2d 148, 151 (Ct. App. 2013) ("[T]here is no error of law in refusing to give a specific request to

charge where . . . the charge requested is an incorrect statement of law . . . ."), *aff'd as modified on other grounds*, 415 S.C. 475, 783 S.E.2d 808 (2016).

To begin this reconsideration, there is no underlying constitutional or statutory principle of law that requires the "good character evidence alone" charge. Other than the decisions discussed above, there is no basis in law for charging a jury that "good character evidence alone" may form the basis for reasonable doubt. If anything, charges like this—instructing juries on how to interpret and use facts—run afoul of our constitutional prohibition against circuit courts charging juries on the facts. "Judges shall not charge juries in respect to matters of fact, but shall declare the law." S.C. CONST. art. V, § 21.

There are, of course, many jury charges that are valid—despite no constitutional or statutory basis—because they are based on a sound interpretation of applicable case law. However, as demonstrated in the discussion above, the "good character evidence alone" jury charge requested in this case is actually based on a misinterpretation of law. Neither *Barth*, *Hill*, nor *Lyles* say anything about giving such a charge to the jury. Nevertheless, in *Green*, this Court mistakenly relied on *Lyles*, which in turn relied on *Barth* and *Hill*, in making the statement "evidence of good character . . . may in and of itself create a doubt" must be charged. 278 S.C. at 240, 294 S.E.2d at 335. The court of appeals then misinterpreted all of the cases when it reversed the defendant's conviction in *Harrison*. 343 S.C. at 173, 539 S.E.2d at 75. By the time this Court decided *Lee-Grigg*, our misstatement in *Green* had been repeated so many times we apparently accepted it without a meaningful inquiry. *Cf. State v. Rayfield*, 369 S.C. 106, 119, 631 S.E.2d 244, 251 (2006) (Pleicones, J., dissenting in part) ("Some principles of law, however, are not to be charged to a jury."), *majority opinion overruled by State v. Stukes*, 416 S.C. 493, 499, 787 S.E.2d 480, 483 (2016) (holding the jury charge then Associate Justice Pleicones objected to being given should no longer be given because "it is not within the province of the court to express an opinion to the jury on its view of the facts"); *see also State v. Grant*, 275 S.C. 404, 407, 272 S.E.2d 169, 171 (1980) ("The impression is sometimes gained that any language from an appellate court opinion is appropriate for a charge to any jury, but this is not always true.").

The "good character evidence alone" charge has been addressed in other states and in federal courts. Many of these courts once required the charge to be given, relying on an 1896 opinion from the Supreme Court of the United States, *Edgington v. United States*, 164 U.S. 361, 17 S. Ct. 72, 41 L. Ed. 467 (1896), and other nineteenth century state cases.[4] In *Edgington*, as in *Barth*, the defendant challenged the trial court's limitation on the jury's use of evidence of the defendant's good character. 164 U.S. at 365, 17 S. Ct. at 73, 41 L. Ed. at 471. The trial court charged, "If your mind hesitates on any point as to the guilt of this defendant, then you have the right and should consider the testimony given as to his good character." 164 U.S. at 364-65, 17 S. Ct. at 73, 41 L. Ed. at 471. Counsel objected, "We except to that part of the charge in stating the effect of good character, the defendant claiming that it should not be forced only in doubtful cases." 164 U.S. at 365, 17 S. Ct. at 73, 41 L. Ed. at 471. Like this Court did in *Barth* ten years earlier, the Supreme Court of the United States found it was error to limit the jury's consideration of evidence of the defendant's good character. The Supreme Court stated,

> Whatever may have been said in some of the earlier cases, to the effect that evidence of the good character of the defendant is not to be considered unless the other evidence leaves the mind in doubt, the decided weight of authority now is that good character, when considered in connection with the other evidence in the case, may generate a reasonable doubt.

164 U.S. at 366, 17 S. Ct. at 73-74, 41 L. Ed. at 471. The Supreme Court was not saying, however, this should be charged to the jury. Rather, the Court was saying—as we said in *Barth*—the trial court should not restrict the jury's use of evidence of the defendant's good character to "doubtful cases." *See Barth*, 25 S.C. at 181; *see also United States v. Burke*, 781 F.2d 1234, 1240 (7th Cir.

---

[4] *See, e.g., Jupitz v. People*, 34 Ill. 516, 521 (1864) (holding that "in all criminal cases whether the case is doubtful or not, evidence of good character is admissible on the part of the prisoner"); *People v. Garbutt*, 17 Mich. 9, 24, 27 (1868) (finding the trial court's limitation on the jury's use of evidence of the defendant's good character was error because it "surround[ed] the jury with arbitrary rules as to the weight they shall allow to evidence which has properly been placed before them").

1985) ("The [*Edgington*] Court was trying to put an end to instructions that had disfavored character evidence by telling the jury not to consider the evidence unless it first found the case close.").

To this day, some courts hold the "good character evidence alone" charge must be given if requested and supported by the evidence. *See, e.g.*, *State v. Hobbs*, 705 S.E.2d 147, 149 (Ga. 2010) (relying on a line of decisions traceable to *Jupitz*, and holding a trial court must "explain how good character evidence could generate reasonable doubt sufficient to acquit"); *People v. Lyles*, 905 N.W.2d 199, 204 (Mich. 2017) (relying on a standard jury instruction derived from *Garbutt*, and finding the trial court erred in not charging, "Evidence of good character alone may sometimes create a reasonable doubt"). Respectfully, those decisions are based on a misinterpretation of nineteenth century cases—like *Edgington* and *Barth*—that were intended to prohibit trial courts from limiting the jury's use of evidence of good character, not to enable the jury to find reasonable doubt based on "good character evidence alone."

In *Burke*, the Seventh Circuit reconsidered what it conceded was its misinterpretation of *Edgington*, and eliminated the requirement of the "good character evidence alone" jury charge, overruling *United States v. Donnelly*, 179 F.2d 227 (7th Cir. 1950). The *Burke* court's explanation of how the *Donnelly* court misinterpreted *Edgington* is particularly useful in explaining that the "good character evidence alone" charge must not be given. Referring to the *Edgington* Court's statement, "The circumstances may be such that an established reputation for good character . . . would alone create a reasonable doubt,"[5] 781 F.2d at 1240, the *Burke* court stated,

> It is a mistake to lift language out of a passage such as this and insert it in a jury instruction. Language in judicial opinions is not meant to be given undigested to a jury. Legal terms are hard enough for lawyers to understand; ripped from their context and presented to lay deciders, passages from opinions may do nothing but confound. It is always necessary for the judge to put the thought in language that those who see the

---

[5] *Edgington*, 164 U.S. at 366, 17 S. Ct. at 74, 41 L. Ed. at 471.

inside of a court only once in a lifetime can understand.

781 F.2d at 1240. The court continued,

> *Edgington* did not suggest that the instruction should *say* that character evidence be considered in a special way by the jury; to the contrary it quoted at length from and cited cases holding that character evidence should simply be considered with other evidence. *Edgington* told the federal courts to eliminate differences in the treatment of character and other evidence, not to create new differences.

781 F.2d at 1241. The Seventh Circuit went on to explain that every federal circuit has repudiated the "good character evidence alone" charge, stating, "Every other court of appeals that has spoken on the question has concluded that such an instruction gives undue weight to character evidence. . . . Today we join the other courts of appeals. We overrule *Donnelly* and affirm the conviction." 781 F.2d at 1237; *see also* 781 F.2d at 1241 n.3 ("collect[ing] illustrative cases [from every circuit] in a note").

In *Barth*, *Hill*, and *Lyles*, we clarified the jury must consider evidence of a defendant's good character in all cases, not just those where the State's proof is otherwise "doubtful." The clear consequence of these holdings is that—in some cases—evidence of a defendant's good character alone may legitimately cause the jury to find reasonable doubt and acquit. It is correct under the law, therefore, that good character evidence alone may give rise to reasonable doubt. However, the mere fact a statement is correct under the law does not require it to be charged to the jury. This statement is applicable to this case because it addresses a point of fact. The applicable principle of law is simply that the jury must consider all the evidence in all cases. It is up to the trial lawyer—not the trial court—to address the point of fact: whether good character evidence alone gives rise to reasonable doubt in any given case. *See Marin*, 404 S.C. at 623, 745 S.E.2d at 153 ("The role of the trial court is to charge the jury correctly based on the evidence presented at trial. The lawyers bear the responsibility to argue how a point of law affects the jury's interpretation of the evidence." (citation omitted)).

As the majority explains, this Court began in 2009 what has become a clear trend to forbid jury charges that instruct juries on how to interpret and use evidence. I am pleased we now extend that trend to evidence of a defendant's good character, and I join the majority's prohibition that trial courts must not charge the jury that "good character evidence alone" may give rise to reasonable doubt.